BALDOCK, Circuit Judge.
Petitioner Daive Miekeviciute is a native and citizen of Lithuania who entered the United States on a visitor’s visa in 1991. The Immigration and Naturalization Service (INS) initiated deportation proceedings against her after she overstayed her visa. Petitioner applied for asylum. The immigration judge denied Petitioner’s asylum application and determined she was deportable. The Board of Immigration Appeals (BIA) upheld the immigration judge’s decision. We affirmed. See Mickeviciute v. Immigration and Naturalization Serv., 18 Fed. Appx. 772 (10th Cir.2001)(unpublished).
After the BIA’s decision, but before this Court affirmed, Petitioner filed a motion with the BIA to reopen her deportation proceedings. Petitioner argued she was entitled to a reopening under Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988), because her former counsel rendered ineffective assistance in handling her diversity visa application. In 1994, Petitioner applied for a visa under the Diversity Visa Lottery Program. Congress instituted this program to distribute visas to persons from countries that historically have low rates of immigration to the United States. See 8 U.S.C. § 1153(c)(1).
The statute directs the Attorney General to calculate immigration rates for the past five years and identify low-admission states and regions. 8 U.S.C. §§ 1151(a), 1153(c). The diversity visas are then allotted, based on formula, to persons from the low-admission states or regions. 8 U.S.C. § 1153(c). The program operates on a fiscal year, whereby only a certain number of visas are available to the immigrants from the low-admission states or regions. Id. ... Applications far exceed[ ] allotments .... The eligible immigrants must submit an application for the lottery during a specified time period, usually thirty days. See, e.g., 59 Fed.Reg. 61918. A computer randomly selects the set number of applicants from the pool, hence the term “lottery”. 22 C.F.R. § 42.33(c). The lottery winners are notified in the summer and are instructed on how to apply for an immi *1161 grant visa. See, e.g., 61 Fed.Reg. 58730, 58781. The lottery visa offer is only good until the last day of the fiscal year in which the application was submitted. 22 C.F.R. §§ 42.33(e), (g). Thus, a 1995 applicant, notified in the summer of 1995, had from October 1995 until September 30, 1996 to complete the application process. 59 FecLReg. 61918, 61919-20. Persons selected for [diversity] visas, who reside in the United States, may petition for an adjustment of status under 8 U.S.C. § 1255(a). The caveat is that the applicant must complete the process, application and adjudication, before time expires because a visa can only be issued during the relevant fiscal year. 8 U.S.C. § 1151(a)(3); 8 U.S.C. § 1153(c)(1), 8 U.S.C. § 1154(a)(l)(I)(ii).
Iddir v. Immigration and Naturalization Serv., 301 F.3d 492, 494 (7th Cir.2002).
Petitioner alleges that after she was randomly selected in the visa lottery, her attorney failed to follow up on her diversity visa interview request, thereby depriving her of the opportunity to receive a diversity visa. She alleges her attorney rendered ineffective assistance in her deportation proceedings because he failed to inform the BIA through a motion to remand that she was selected in the diversity visa lottery. Petitioner requested the BIA to reopen her deportation proceedings- and direct the immigration judge to place her case in administrative closure until she has had a reasonable opportunity to petition a federal court for relief.[1] Petitioner wants a federal court to order the National Visa Center to consider her diversity visa interview request as timely filed in view of her previous attorney’s ineffective assistance.
The BIA found Petitioner met the preliminary requirements for supporting her motion with an ineffective assistance claim under Matter of Lozada.[2] The BIA nevertheless denied Petitioner’s motion to reopen after determining it did not have the power to grant Petitioner the ultimate form of relief she sought. Petitioner seeks review of the BIA’s decision denying her motion to reopen. Because the INS commenced deportation proceedings against Petitioner before the Illegal Immigration Reform and Immigrant Responsibility Act’s (IIRIRA) April 1,1997 effective date, and the order of deportation was entered after October 31, 1996, we have jurisdiction to review the BIA’s decision under the pre-IIRIRA version of 8 U.S.C. § 1105a, *1162 as amended by the transitional rules. See Itaeva v. Immigration and Naturalization Serv., 314 F.3d 1238, 1240 (10th Cir.2003); Osei v. Immigration and Naturalization Serv., 305 F.3d 1205, 1207 n. 1 (10th Cir. 2002); see also Aguilera v. Kirkpatrick, 241 F.3d 1286, 1290-91 (10th Cir.2001) (holding 8 U.S.C. § 1252(g) does not preclude appellate review of motions to reopen).
We review the BIA’s decision on a motion to reopen for an abuse of discretion. Immigration and Naturalization Serv. v. Abudu, 485 U.S. 94, 104-05, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988); Dulane v. Immigration and Naturalization Serv., 46 F.3d 988, 994 (10th Cir.1995). The BIA abuses its discretion when its decision “ ‘provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements.’ ” Osei 305 F.3d at 1208 (quoting Zhao v. United States Dep’t of Justice, 265 F.3d 83, 93 (2d Cir.2001)). The BIA may deny a motion to reopen on at least three independent grounds. Abudu, 485 U.S. at 104-05, 108 S.Ct. 904. “First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought.” Id. at 104, 108 S.Ct. 904. “Second, the BIA may hold that the movant has not introduced previously unavailable, material evidence, or, in an asylum application case, that the movant has not reasonably explained his failure to apply for asylum initially.” Id. at 104-05, 108 S.Ct. 904 (internal citations omitted). Third, in cases in which the ultimate grant of relief is discretionary, the BIA may determine the movant would not be entitled to the discretionary grant of relief. Id. at 105,108 S.Ct. 904.
In denying Petitioner’s motion to reopen, the BIA’s entire analysis consisted of the following:
[Petitioner] is not seeking a form of relief from deportation that is within the power of this Board to grant. In fact, [Petitioner] has acknowledged that she will have to pursue the relief she seeks in federal court (Brief at 3). [Petitioner] wants the Board to reopen deportation proceedings and hold them in abeyance until she has had a fair and reasonable opportunity to petition the federal court for the relief she seeks. She wants the federal court to order the National Visa Center to consider her diversity visa interview request as timely filed in view of her previous counsel’s ineffective assistance with the diversity visa application process.
The Board has exercised the authority it has in this case by issuing a decision on [Petitioner’s] appeal from the decision of the Immigration Judge. See generally 8 C.F.R. § 3.1. It would not be appropriate for us to reopen the proceedings for the sole purpose of permitting [Petitioner] to remain in the United States while she seeks relief in the federal courts. See 8 C.F.R. § 3.2(c).
We are unable to determine from the BIA’s language and mere citation to 8 C.F.R. § 3.2(c) on which of the Abudu grounds the BIA relied to deny Petitioner’s motion to reopen. We cannot perform a meaningful review where the Board does not sufficiently articulate its reasoning. See Dulane, 46 F.3d at 995 (noting that releasing the BIA of its obligation to articulate a reasoned basis for its decisions would eliminate any guaranty of rationality and foreclose meaningful review).[3] We are *1163 not at liberty to search the law and the record for reasoning to support the BIA’s decision because “ ‘a court may not uphold an agency action on grounds not relied on by the agency.’ ” St. Anthony Hosp. v. United States Dep’t of Health and Human Servs., 309 F.3d 680, 699 (10th Cir.2002) (quoting Alameda Water & Sanitation Dist. v. Browner, 9 F.3d 88, 91 (10th Cir. 1993)).
Logical reasons exist to deny a motion to reopen where the BIA cannot grant Petitioner the ultimate relief she seeks. But recently we cautioned the BIA that departures from the usual Matter of Loza-da requirements on motions to reopen must be supported by reasoned explanation. See Osei, 305 F.3d at 1208-10 (holding BIA abused its discretion in denying a motion to reopen on grounds of ineffective assistance where BIA supported denial by mere citation to 8 C.F.R. § 3.2(c), BIA had not previously based denial of such a motion on § 3.2(c), and BIA provided no explanation for changing course). We therefore remand to the BIA with instructions to explain whether its lack of authority to grant the ultimate relief Petitioner requests constitutes (1) a failure to establish prima facie eligibility for the underlying substantive relief Petitioner seeks; (2) a failure to introduce previously unavailable, material evidence; or (3) a failure to establish entitlement to discretionary relief. See Abudu, 485 U.S. at 104-05, 108 S.Ct. 904. Alternatively, the BIA can decide, with reasoned explanation, that petitioners seeking a motion to reopen under Matter of Lozada must demonstrate as a new requirement that the BIA itself has authority to grant the ultimate substantive relief from deportation the petitioner seeks. See Osei, 305 F.3d at 1208-10.
The dissent argues we can discern enough from the BIA’s decision to infer the BIA held that Petitioner did not establish a prima facie case for relief. But we think the dissent goes much further than a “fair reading” to “reasonably discern” what, the BIA meant in its order. See dissent at 1166. The dissent spends considerable effort explaining possible grounds to support the BIA’s decision. See dissent at Section II. The dissent’s extended reasoned analysis simply proves our point, however, because not one shred of the dissent’s reasoning to deny Petitioner a motion to reopen appears in the BIA’s opinion. Had the BIA given such a reasoned explanation of its decision, we would have no need to remand. An agency’s cursory explanation with a mere citation to a regulation without even designating upon which part of the regulation the agency relies leaves courts to do as the dissent and the INS’s brief do — manufacture reasoning to support an agency decision. This we cannot do. St. Anthony Hosp., 309 F.3d at 699; see also Double J. Land & Cattle Co. v. United States Dep’t of Interior, 91 F.3d 1378, 1383 (10th Cir.1996) (‘When-an agency makes a decision, the grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record.”) (internal quotation and citation omitted); Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1575 (10th Cir.1994) (“The agency must make plain its course of inquiry, its analysis and its reasoning. After-the-fact rationalization by counsel in briefs or argument will not cure. noncompliance by the agency with *1164 these principles.”) (internal citation omitted).[4]
Beyond giving an explanation not provided by the BIA, the analysis in Section II of the dissent is irrelevant to our difficulty with the BIA’s decision. We do not hold Petitioner is entitled to a diversity visa, or that any court even has jurisdiction to adjudicate such a claim. We do not hold that the BIA is required to reopen proceedings and the INS must grant administrative closure whenever an alien claims she will seek relief in another forum. See dissent at 1170. More importantly, we do not hold the BIA abused its discretion by denying the motion to reopen in this case. See dissent at 1166, 1168. We agree with the dissent that many defensible reasons could support such a ruling. We maintain merely that such reasons must come from the BIA in the first instance, and we remand for that explanation. See St. Anthony Hosp., 309 F.3d at 699; Dulane, 46 F.3d at 995; Cf. United States v. Stumpf, 938 F.2d 172, 175 (10th Cir.1991) (remanding to district court for explanation of upward departure under sentencing guidelines to permit meaningful review; appellate court would not “rationalize” district court’s decision to depart).
The Supreme Court recently reminded the appellate courts that agencies should be the primary decision makers over matters which Congress has vested in their authority. See Immigration and Naturalization Serv. v. Ventura, — U.S. -, 123 S.Ct. 353, 355, 154 L.Ed.2d 272 (2002) (holding circuit court should have remanded to BIA to determine whether conditions in Guatemala had changed, rather than make that decision itself). “A court of appeals is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its *1165 own conclusions based on such an inquiry.... Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.” Id. at 355 (internal quotation and citation omitted, emphasis added); see also Olenhouse, 42 F.3d at 1575 (“If the agency has failed to provide a reasoned explanation for its action, ... the reviewing court may supplement the record or remand the case to the agency for further proceedings.... It may not simply affirm.”) (internal citations omitted). Although Ventura remanded for the BIA to make a factual determination, we believe the BIA, not the Tenth Circuit Court of Appeals, should have the first opportunity to “bring its expertise to bear upon the matter; [ ] evaluate the evidence; [ ] make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides.” Id. at 355-56.
The dissent argues this case is the opposite of Ventura because here, the dissent would affirm the agency decision whereas in Ventura, the Ninth Circuit reversed the agency and made a decision on the merits itself. See dissent at 1167. But honoring an agency’s authority is not measured by whether we reverse or affirm the agency’s decision. Rather, we safeguard agency decision making by ensuring that the agency itself makes the decisions entrusted to its authority based on grounds articulated by that entity. Because an agency has a duty not only to reach an outcome, but to explain that outcome, we intrude on the agency’s authority not only by reaching a certain result on the merits as the Ninth Circuit did in Ventura, but also by supporting a result reached by the agency with reasoning not explicitly relied on by the agency. See Securities and Exchange Comm’n v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) (noting that a court reviewing an administrative agency decision must judge the decision’s propriety solely on the grounds the agency invoked: “If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.”).
Finally, the dissent takes us to task for “consuming] legal and administrative resources, and producing] delay.” Dissent at 1167. Although our resolution may seem to accomplish little more than delay, preservation of the process and the distinct functions of the executive and judicial branches override the need for the speedy resolution of any particular case. See Chenery Corp., 332 U.S. at 196, 67 S.Ct. 1575. We recognize the dissent’s analysis is emotionally appealing. Petitioner has managed to overstay her visa for approximately ten years, and has little prospect of being able to remain in this country legally. But we must resist the temptation of stepping out of our limited judicial role even where resolving the merits ourselves may seem an easier, more efficient, and more palatable course.[5]
*1166 For the reasons stated above, we remand to the BIA for further explanation of its decision denying Petitioner’s motion to reopen. The BIA need not accept further briefing from the parties.
REMANDED WITH INSTRUCTIONS.

. Administrative closure of a case temporarily removes the case from an immigration judge’s calendar or from the BIA's docket. " 'The administrative closing of a case does not result in a final order. It is merely an administrative convenience which allows the removal of cases from the calendar in appropriate situations.’ " In re Gutierrez-Lopez, 21 I. & N. Dec. 479, 480 (BIA 1996) (quoting Matter of Amico, 19 I. & N. Dec. 652, 654 n. 1 (BIA 1988)). The dissent suggests even this form of relief is not available to Petitioner because a case cannot be administratively closed if opposed by either party. See dissent at 1167 n. 1. But the INS did not oppose administrative closure, -or Petitioner’s motion to reopen, before the BIA. Only on appeal before this panel has the INS objected. The BIA could not have relied on this ground in its decision denying Petitioner's motion to reopen. We express no opinion as to the BIA’s option of relying on the INS’ current opposition to administrative closure as a ground to deny Petitioner’s motion to reopen on remand.

. Under Matter of Lozada, a motion based on a claim of ineffective assistance of counsel must be supported by (1) the aggrieved party’s affidavit setting forth the agreement that was entered into with former counsel and what counsel did or did not represent to the respondent in this regard; (2) evidence that former counsel was informed of the allegations and allowed the opportunity to respond; and (3) evidence the aggrieved party filed a complaint with appropriate disciplinary authorities, and if not, why not. Matter of Lozada, 19 I. & N. Dec. at 639.

. The dissent argues Petitioner understood the BIA’s decision as holding that she failed to establish prima facie eligibility for the underlying substantive relief she sought. See dissent at 1167 n. 1. We are not so sure. Petitioner’s opening brief does not discuss *1163 whether she established a prima facie case. Instead, Petitioner argues the BIA erred by stating it was incapable of providing her relief because the BIA had the power to reopen and administratively close her case. In any event, whether Petitioner can glean enough meaning from the BIA’s decision to mount an appeal does not determine whether we, as the reviewing court, have enough information to conduct a meaningful review.

. We also are concerned that the BIA’s cursory explanation raises questions about our jurisdiction. Although not challenged by either party, we have an independent obligation to examine our own jurisdiction. Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1274 (10th Cir.2001). As stated above, the transitional rules under IIRIRA govern this case. See supra at 1161-1162. Sections 309(c)(4)(E) and (G) of IIRIRA’s transitional rules preclude judicial review of any decision "under” certain sections enumerated therein. On its face, the BIA’s decision in this case does not appear to deny Petitioner's motion to reopen based on any of the sections enumerated in § 309(c)(4)(E) or (G). Thus we exercise jurisdiction to remand for further explanation. See, e.g., Prado v. Reno, 198 F.3d 286, 291-92 (1st Cir.1999) (holding § 309(c)(4)(E) did not preclude judicial review over BIA’s denial of a motion to reopen because BIA denied the motion under 8 C.F.R. § 3.2(c)(2), not Immigration and Nationality Act § 245); Luis v. Immigration and Naturalization Serv., 196 F.3d 36, 40 (1st Cir.1999) (holding § 309(c)(4)(E) did not preclude judicial review over BIA's denial of a motion to reopen because the BIA denied the motion under 8 C.F.R. § 3.2(a), not on a section enumerated in § 309(c)(4)(E), and the decision was not discretionary but an uncontested factual determination); Stewart v. Immigration and Naturalization Seiv., 181 F.3d 587, 594-95 (4th Cir.1999) (holding court had jurisdiction to review BIA's decision denying a motion to reopen because it was a decision under § 242B(e)(2)(A) rather than a decision under a section enumerated in § 309(c)(4)(E)); Arrozal v. Immigration and Naturalization Serv., 159 F.3d 429, 431-32 (9th Cir.1998) (holding court had jurisdiction to hear an appeal from the BIA’s denial of a motion to reopen under § 241(a)(2) of the Immigration and Nationality Act because § 241(a)(2) is not one of the enumerated sections listed in § 309(c)(4)(E)). Because our jurisdiction in part depends on the basis for the BIA’s decision, we remind the BIA that to the extent it fails to adequately articulate the grounds on which it denies relief, our jurisdiction may be difficult to ascertain. See Stewart, 181 F.3d at 595 ("A reviewing court ... must examine the basis for the BIA's decision rather than the end result of the BIA’s decision to determine whether the decision is "under” a section listed in § 309(c)(4)(E) that precludes judicial review.”) (emphasis in original).

. The dissent also argues Osei is distinguishable because in that case the petitioner claimed the results of the underlying asylum claim were fundamentally unfair because of ineffective assistance of counsel. See dissent at 1170. Although Petitioner does not argue counsel was ineffective in presenting her asylum claim, she does argue counsel was ineffective during the deportation proceedings because he failed to inform the BIA she won the diversity visa lottery. Counsel could have sought a motion to remand to hold Petitioner's deportation proceedings in abeyance until her diversity visa application was processed. We express no opinion as to the merits of Petitioner's ineffective assistance claim, we *1166 note only that like the petitioner in Osei, Petitioner is arguing her counsel’s ineffective assistance during the deportation proceedings resulted in a final order of deportation under which she would not be laboring had counsel rendered effective assistance, in violation of her due process rights.