**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 1, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

KAMAL PRASAD BHATTARAI,

     Petitioner,

v.

ERIC HOLDER, JR.,
United States Attorney General,

     Respondent.

No. 09-9541

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO** and **GORSUCH**, Circuit Judges, and **ARGUELLO**,[**] District Judge.
_____

Petitioner Kamal Bhattarai, a native and citizen of Nepal, seeks review of the

decision of the Board of Immigration Appeals (BIA), which denied Petitioner's

Combined Motion to Reconsider and Motion to Reopen his removal proceedings due to

changed circumstances in Nepal. With respect to the Motion to Reopen, the BIA rejected

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

[**] Honorable Christine M. Arguello, District Court Judge, District of Colorado, sitting by designation.

Mr. Bhattarai's claim that politically changed circumstances in Nepal establish an increased danger of persecution due to his political opinion and/or his claimed membership in particular political groups. With respect to the Motion to Reconsider, the BIA upheld its prior determination that the previously-submitted evidence was insufficient to establish that his political opinion and/or his claimed membership in a particular social group were central reasons for his past mistreatment. We deny his Petition for Review.

## I.    BACKGROUND

On or about August 8, 2004, Mr. Bhattarai entered the United States on a non-immigrant A-2 diplomatic visa to attend an educational program at the University of Wyoming. In early August of 2005, Mr. Bhattarai, after having over-stayed his visa by approximately nine months, filed an affirmative application for asylum and withholding of removal based on alleged past persecution and future persecution due to his political opinion and his membership in political groups. Following an interview, the Department of Homeland Security denied his application and referred him for removal proceedings.

On January 31, 2006, during removal proceedings, Mr. Bhattarai conceded removability, but renewed his claim for asylum, withholding, and, alternatively, voluntary departure. On March 7, 2007, the Immigration Judge (IJ) held a hearing at which Mr. Bhattarai testified that he worked as a computer teacher at a military academy from March 1992, until the time he left Nepal. Mr. Bhattarai is a member of a politically active family, and he has been politically involved since the early 1990's, when he joined the

2

Nepali Student Union. Mr. Bhattarai later became involved in the Nepali Congress Party and the Nepali Teachers' Association, among other organizations. Over the course of a year, between January 2003 and January 2004, Mr. Bhattarai received three letters from the Communist Party of Nepal ("Maoists"), each demanding a financial contribution and military information. At no time did Mr. Bhattarai comply with the demands. Accordingly, each subsequent letter contained a demand for a greater amount of money. The last letter warned Mr. Bhattarai that the Maoists denounced him as an enemy of the war and that his and his family's lives were at risk. About a month after Mr. Bhattarai's receipt of the third letter, the Maoists seized Mr. Bhattarai's parents' house and land because they refused to pay the Maoists 50,0000 Rs. Several months later, in June 2004, Mr. Bhattarai's apartment was completely destroyed by a fire-bomb. Mr. Bhattarai suspected the fire-bomb was set by the Maoists.

In an oral decision announced at the close of the hearing, the IJ denied all relief, concluding that the Maoists targeted Mr. Bhattarai, not because of his political beliefs, but because he did not submit to their demands for money and military information.

Mr. Bhattarai timely appealed the IJ's March 7, 2007 decision arguing that (1) he experienced past persecution on account of his political beliefs, (2) he had a well-founded fear of persecution, and (3) his testimony, the supporting documents, and the conditions in Nepal adequately demonstrated a clear likelihood of future persecution. The appeal included a concurrent request for remand based upon supplemental evidence of changed conditions, namely a state of anarchy then existing in Nepal.

3

In a decision dated November 17, 2008, the BIA, finding no error in the IJ's determination that Mr. Bhattarai failed to establish past persecution or a well-founded fear of future persecution in Nepal, dismissed Mr. Bhattarai's appeal.

Mr. Bhattarai did not seek judicial review of the BIA's denial of his appeal. Instead, on December 17, 2008, Mr. Bhattarai timely filed a combined Motion to Reconsider and Motion to Reopen his removal proceedings due to changed circumstances in Nepal.[1] In pertinent part, Mr. Bhattarai asserted that the BIA should reopen his case or reconsider his application because: (1) he established past persecution and a well-founded fear of future persecution; (2) substantial grounds exist for believing that he would be in danger of being subject to torture and, therefore, he was eligible for relief under the United Nations' Convention Against Torture (CAT); and (3) changed conditions in Nepal rendered likely his persecution if he returned to Nepal.

In support of his Motion to Reopen, Mr. Bhattarai submitted news articles about the election of a Maoist leader to the office of Prime Minister of Nepal. However, some of the articles suggested that, in light of the Maoists' victory, the country might return to peace. Another article indicated that, prior to the election, the government of Nepal may

---

[1] Pursuant to 8 U.S.C. §§ 1229a(c)(6)(B), (7)(C)(i) and 8 C.F.R. §§ 1003.2(b)(2), (c)(2), motions to reconsider and motions to reopen shall be filed within 30 and 90 days, respectively, of the final administrative order of removal.

Although Mr. Bhattarai filed a combined Motion to Reopen and Reconsider, the Court, in its analysis, will address each separately.

have contributed to the violence more than the Maoists. A third article reported that the newly-elected prime minister "would no longer tolerate" the violence.

On July 10, 2009, the BIA issued a decision denying Mr. Bhattarai's combined Motion to Reopen and Reconsider. With respect to the Motion to Reopen, the BIA found (1) that Mr. Bhattarai had failed to "satisfy his 'heavy burden' of showing that, if his proceedings were reopened, this new evidence would likely change the result reached in this case," and (2) with respect to Mr. Bhattarai's argument that he was entitled to apply for CAT protection, the evidence of the Maoists' recent election victory failed to "demonstrate, *prima facie*, that it is more likely than not that [Mr. Bhattarai] will be tortured by, or with the consent or acquiescence, [sic] of officials of the Government of Nepal as presently constituted." With respect to the Motion to Reconsider, the BIA concluded that the testimony and supporting evidence failed to establish that Mr. Bhattarai's political opinion and/or his claimed membership in particular political groups was a "central reason" for his past mistreatment or fears of future persecution by the Maoists. Thus, the BIA concluded that there was no error of fact or law in its previous decision denying Mr. Bhattarai's combined Motion to Reopen and Reconsider.

On August 6, 2009, Mr. Bhattarai timely filed the instant Petition for Review of the BIA's denial of his combined Motion to Reopen and Reconsider. Oral argument was presented before this Court on September 23, 2010. Mr. Bhattarai's arguments are summarized as follows: (1) the BIA abused its discretion by applying the incorrect burden

5

of proof, (2) the BIA failed to consider dramatic changes in country conditions,[2] and

(3) the BIA abused its discretion by issuing a decision devoid of any individualized

analysis and simply consisting of "a boilerplate recitation of general standards[.]" For the

reasons discussed below, we find no abuse of discretion in the BIA's denial of Mr.

Bhattarai's combined Motion to Reopen and Reconsider.

## II.    ANALYSIS

As noted above, Mr. Bhattarai failed to seek review in this Court of the BIA's

November 17, 2008 denial of his asylum appeal. Pursuant to 8 U.S.C. § 1252(d)(1),

a "petition for review must be filed not later than 30 days after the date of the final order

of removal." The 30-day filing period is "jurisdictional in nature and must be construed

with strict fidelity to [its] terms." *Stone v. INS*, 514 U.S. 386, 405 (1995). Accordingly,

this Court does not have jurisdiction to review the BIA's denial of Mr. Bhattarai's asylum

appeal. *See Infanzon v. Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004) (finding lack of

jurisdiction to review BIA's order affirming IJ's denial of asylum application because

petitioner did not timely file a petition of review within thirty days of the BIA's order)

(citing *Nahatchevska v. Ashcroft*, 317 F.3d 1226, 1227 (10th Cir. 2003)). Further, the

filing of a motion to reconsider does not toll the statute's 30-day filing deadline. *See*,

---

[2] Mr. Bhattarai also asserts that the BIA's "failure to consider [his] new evidence (the Maoists' victory at the polls) in conjunction with his previously submitted evidence (the significant harm, established on the record, that he faced from the Maoists), constituted the [BIA's] third discretionary error[.]" However, this argument is related to whether the BIA failed to consider changes in country conditions and will be addressed accordingly.

*e.g.*, *Ston*e, 514 U.S. at 394-406; *Belay-Gebru v. INS*, 327 F.3d 998, 1000 (10th Cir. 2003) ("a petition for review of a final order of exclusion or deportation must be filed with the court of appeals not later than thirty days after issuance of the final order," *i.e.*, after the BIA denies an appeal) (citing 8 C.F.R. § 1241.31); *Mana v. Gonzales*, 128 Fed. Appx. 167, 169 (1st Cir. 2005) (unpublished) (finding that the 30-day filing period was not tolled by a motion to reconsider) (citing 8 U.S.C. § 1252(b)(1)); *Valdivia v. Gonzales*, 128 Fed. Appx. 564 (9th Cir. 2005) (unpublished) (similar holding). However, because Mr. Bhattarai filed the instant Petition for Review within 30-days of the BIA's denial of his combined Motion to Reopen and Reconsider based on changed country conditions, we do have jurisdiction to consider the BIA's denial of the combined motion to reopen and reconsider.

### A.    Motion to Reopen

"The BIA has broad discretion, conferred by the Attorney General, 'to grant or deny a motion to reopen,' but courts retain jurisdiction to review the BIA's decision." *Kucana v. Holder*, — U.S. — , —, 130 S.Ct. 827, 838, — L.Ed.2d —, — (2010) (quoting 8 C.F.R. § 1003.2(a)); *Karmacharya v. Holder*, No. 09-9566, 2010 WL 3446829, at *1 (10th Cir. Sept. 2, 2010) (unpublished). We review orders denying motions to reopen for an abuse of discretion. *Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Galvez Piñeda v. Gonzales*, 427 F.3d 833, 838 (10th Cir.

7

2005) (internal quotations omitted). "A motion to reopen proceedings [based on changed country conditions] shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing[.]" 8 C.F.R. § 1003.2(c)(1); *see also* 8 U.S.C. § 1229a(c)(7)(C)(ii). The BIA may deny a motion to reopen for various reasons, including failure to establish a *prima facie* case for the relief sought. See *INS v. Abudu*, 485 U.S. 94, 107-08 (1988).

### 1.   Asylum

To qualify for asylum, an alien has the burden of showing he "has suffered past persecution or has 'a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(A) (quotation and alteration omitted)). Such a fear of future persecution must be both subjectively genuine and objectively reasonable, as evidenced by credible, direct, and specific evidence in the record. *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004).

Three news articles Mr. Bhattarai submitted in support of his Motion to Reopen reflect improved conditions in Nepal due to the Maoists' election victory and the Maoist-backed prime minister's stated intolerance for further violence. Although Mr. Bhattarai asserts that the BIA failed to consider dramatic changes in country conditions, the BIA specifically noted the changed and improved country conditions in its July 10, 2009

8

denial of his combined Motion to Reconsider and Reopen. Such evidence of improved conditions in Nepal undermines Mr. Bhattarai's fear of future persecution. *See Vatulev v. Ashcroft*, 354 F.3d 1207, 1211 (10th Cir. 2003) ("the relative order and improved social/political conditions . . . would attenuate, not amplify, any potential threat of cognizable persecution behind petitioner's personal experiences."). Further, contrary to Mr. Bhattarai's assertion that the BIA failed to consider his new evidence in conjunction with previously submitted evidence, in its decision, the BIA explicitly referred to both the previously submitted and newly submitted evidence. Accordingly, the BIA did not abuse its discretion when it held that Mr. Bhattarai failed to establish a *prima facie* case for asylum protection.

### 2. Withholding of Removal

Withholding of removal is available under section 241(b)(3) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3), if the alien can demonstrate a *clear probability* that his life or freedom would be threatened on account of a protected characteristic, such as the alien's political opinion or affiliation. *See Woldemeskel v. INS*, 257 F.3d 1185, 1193 (10th Cir. 2001); *Kapcia v. INS*, 944 F.2d 702, 706-07 (10th Cir. 1991). The "clear probability" standard is met through the presentation of "evidence establishing that it is more likely than not that [the applicant] would be subject to persecution[.]" *INS v. Stevic*, 467 U.S. 407, 429-30 (1984) (quoted in *Woldemeskel*, 257 F.3d at 1193)).

The Tenth Circuit has previously stated, an applicant's "failure to satisfy the burden of proof for asylum, however, necessarily constitutes a failure to meet the more stringent burden of proof for restriction on removal." *Ba v. Mukasey*, 539 F.3d 1265, 1271 (10th Cir. 2008); *see also Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010). In the instant case, Mr. Bhattarai's newly-submitted evidence failed to satisfy his burden of proof for asylum. As such, Mr. Bhattarai, likewise, has failed to establish a *prima facie* case for restriction on removal.

Accordingly, the BIA did not abuse its discretion when it found that Mr. Bhattarai failed to satisfy his burden of showing that this new evidence would likely change the result reached in his case.

### 3.   Eligibility Under CAT

To establish eligibility for withholding of removal under the United Nations' Convention Against Torture (CAT), an applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). A claim under the CAT differs from a claim for asylum or withholding of removal under the INA because "there is no requirement that the petitioners show that torture will occur on account of a statutorily protected ground." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (citation omitted).

However, the evidence of improved conditions in Nepal undermines the likelihood that Mr. Bhattarai would be tortured on any ground by, or at the acquiescence of, the Nepalese government, even in its current state of being controlled by the Maoists.

10

Therefore, the BIA did not abuse its discretion when it concluded that Mr. Bhattarai failed to establish a *prima facie* case for protection under CAT.

The dissent asserts that we have usurped the agency's role by reevaluating the evidence presented to the BIA and substituting our reasoning for the BIA's, in contravention of the narrowly circumscribed scope of review, as set forth in *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943). We respectfully disagree. This case is distinguishable from the cases cited by the dissent because the BIA clearly articulated that Mr. Bhattarai failed to satisfy the first *Abudu* factor, namely "to demonstrate, *prima facie*, that it is more likely than not that he will be tortured[.]" In addition, the BIA's reference to both "the Government of Nepal as presently constituted," and Mr. Bhattarai's "new evidence," *i.e.*, news articles of a Maoist leader's election to the office of Prime Minister of Nepal, demonstrates that the BIA <u>did</u> consider the issue of changed country conditions and applied the facts to these standards. We note that the BIA "is not required to write an exegesis on every contention"; rather, it is required to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1207 (10th Cir. 2008); *Becerra-Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987). Although the BIA's July 10, 2009 decision could have been more thorough, the BIA has sufficiently articulated its reasoning such that we have been able to determine that the BIA did not abuse its discretion. The fact that the evidence in this case is open to multiple interpretations, as the dissent suggests, might make it possible for a reasonable

11

adjudicator to reach a contrary conclusion; however, such evidence does not mean that a reasonable adjudicator would be *compelled* to conclude to the contrary. Substantial evidence in the record supports the BIA's findings and, thus, those findings are conclusive. *See Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009) (stating that under the substantial evidence standard of review, factual findings are conclusive unless a reasonable adjudicator would be compelled to reach the contrary conclusion).

The dissent duly acknowledges that our role as a reviewing court is to review the BIA's decision for abuse of discretion, not to reevaluate the evidence by conducting a *de novo* inquiry into the matter and reach our own conclusions based on such inquiry. Nonetheless, it appears that the dissent has conducted its own *de novo* inquiry, decided that the evidence is open to multiple interpretations, and concluded that it would have reached a different decision than the BIA. To remand this case to the BIA for these reasons would violate Chenery.

## B. Motion to Reconsider

Orders denying motions to reconsider are also reviewed for an abuse of discretion. *See Infanzon v. Ashcroft*, 386 F.3d 1359, 1361-62 (10th Cir. 2004); *Belay-Gebru v. INS*, 327 F.3d 998, 1000 n.5 (10th Cir. 2003). Motions to reconsider "shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority." 8 U.S.C. § 1229a(c)(6)(B). A motion to reconsider "is a request that the [BIA] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument

12

or aspect of the case that was overlooked." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7ᵗʰ Cir.

2004) (quoting *Matter of Cerna*, 20 I. & N. Dec. 399, 402 n.2 (BIA 1991)).

Mr. Bhattarai asserts that the BIA erred because it applied the incorrect burden of proof when it concluded that he was not persecuted due to his political opinions or affiliation with a political group. In support of the instant Petition for Review, Mr. Bhattarai contends that he need not demonstrate that a protected characteristic was the <u>sole</u> reason for his mistreatment, or fears thereof. However, as Mr. Bhattarai duly notes, he was required to show that his political opinions or affiliation with a social group were not "incidental, tangential, superficial, or subordinate to another reason for harm." *Matter of J-B-N- & S-M-*, 24 I. & N. Dec. 208, 214 (BIA 2007).

Recently, in *Dallakoti v. Holder*, 619 F.3d 1264 (10ᵗʰ Cir. 2010), this Court joined other circuits that have accepted the BIA's interpretation of 8 U.S.C. § 1158(b)(1)(B)(i),[3] as set forth in *Matter of J-B-N- & S-M-*. In sum, "the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment." *J-B-N-*, 24 I. & N. Dec. at 214. Having accepted the BIA's interpretation of "central reason," this Court concluded, "[t]o reverse the BIA, the record must establish that any reasonable adjudicator would be *compelled to conclude*" that the applicant's political opinions were

---

[3] "The burden of proof is on the applicant to establish that the applicant is a refugee . . . . To establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i).

"one of the central reasons" for the applicant's mistreatment. *Dallakoti*, 619 F. 3d at 1268 (emphasis added).

As in *Dallakoti*, we find that the instant record contains inconsistent testimony about whether and the extent to which Mr. Bhattarai's or his family's political opinions factored into his and/or their mistreatment. For example, Mr. Bhattarai testified that the Maoists made monetary demands of not only him, but also of other teachers who were not politically active. Additionally, Mr. Bhattarai acknowledged that anyone who fails to comply with the Maoists' demands for money is deemed an enemy of the revolution. Mr. Bhattarai also acknowledged that the Maoists never attacked him during his public displays of political activism. Finally, Mr. Bhattarai admitted that he did not actually know, but merely surmised, that the Maoists targeted his parents because of his political opinions.

Based on the foregoing, we find that the record does not establish that the BIA would have been compelled to conclude that Mr. Bhattarai's political opinions or political group affiliations were "one of the central reasons" for his mistreatment. Further, in his Motion to Reconsider, Mr. Bhattarai primarily reiterated arguments that were considered and rejected by the BIA on appeal. As previously noted, the BIA need not write an exegesis. The BIA's decision references the evidence that it previously considered and, with respect to the Motion to Reconsider, it discusses the newly presented evidence concerning improved country conditions. Based on the foregoing, we are confident that the BIA reviewed the record and grasped Mr. Bhattarai's claims.

14

Accordingly, we find the BIA did not commit any error and, therefore, did not abuse its discretion in denying Mr. Bhattarai's Motion to Reconsider.

## III.   CONCLUSION

Based on the foregoing, we find the Board of Immigration Appeals did not abuse its discretion when it denied Kamal P. Bhattarai's combined Motion to Reopen and Reconsider his application for asylum, withholding of removal, and protection under the United Nations' Convention Against Torture.  Thus, we DENY his Petition for Review.

Entered for the Court

Chritine M. Arguello
District Judge

Bhattarai v. Holder, 09-9541
**LUCERO**, J., dissenting.

In the face of inadequate reasoning by the Bureau of Immigration Appeals ("BIA")
in its rejection of Kamal Prasad Bhattarai's Convention Against Torture ("CAT") claim,
the majority replaces the agency's evaluation of the evidence with its own. (Majority
Order 11.) Because the majority's analysis runs afoul of <u>S.E.C. v. Chenery Corp.</u>, 318
U.S. 80 (1943), I respectfully dissent.[1]

**I**

I do not quarrel with the majority's statement of facts. But to illustrate where I
part ways with my colleagues, I provide more detail on the relevant procedural history.

After determining that Bhattarai was a credible witness, the Immigration Judge
("IJ") found that Bhattarai and his family suffered acts of intimidation and violence, that
the threats to Bhattarai rose to the level of harm necessary to support a case for past
persecution, that Bhattarai "faces a very dangerous situation should he return to Nepal,"
and that Bhattarai could not relocate anywhere in Nepal to avoid this danger. But the IJ
ultimately concluded Bhattarai suffered at the hands of local Maoists because of his
economic and occupational status, not his political opinion or social group, and was thus
ineligible for asylum under 8 U.S.C. § 1101(a)(42)(A).

Against this backdrop of danger created by Maoist guerillas, the IJ also evaluated
and rejected Bhattarai's CAT claim because Bhattarai had "almost diplomatic status" in

---

[1] I take no issue with the majority's handling of Bhattarai's asylum claim. My
dissent is limited to its reasoning with respect to his CAT claim.

the government, and "the government of Nepal would [not] torture the respondent or . . . acquiesce in his torture."

These findings were made, however, before the Maoist revolutionary party, formerly listed by the United States as a foreign terrorist organization, became the ruling government of Nepal. Bhattarai sought reopening of his case partly in response to the regime change. Although he submitted several articles describing the election of the Maoist government and predicting the election's consequences, the BIA declined to reopen, addressing Bhattarai's CAT argument in a solitary paragraph:

> The respondent also seeks reopening based on new evidence reporting on elections conducted in Nepal in 2008, and reflecting that Pushpa Kamal Dahal Prachanda, a Maoist, has been elected Prime Minister. Although these are new developments, the respondent's submissions fail to satisfy his "heavy burden" of showing that if his proceedings were reopened this new evidence offered would likely change the result reached in his case. See Matter of Coelho, 20 I&N Dec. 464, 473 (BIA 1992); INS v. Abudu, 485 U.S. 94, 110 (1988). The respondent specifically seeks an opportunity to apply for CAT protection based on this new evidence. See Motion at 9-10. However, this evidence fails to demonstrate, prima facie, that it is more likely than not that he will be tortured by, or with the consent or acquiescence, of officials of the Government of Nepal as presently constituted. See 8 C.F.R. § 1208.16(c) (2009) (standard of proof for withholding of removal under the CAT); 8 C.F.R. § 1208.18(a) (2009) (defining "torture"); Ferry v. Gonzales, 457 F.3d 1117, 1131 (10th Cir. 2006); Matter of M-B-A-, 23 I&N Dec. 474 (BIA 2002); Matter of J-E-, 23 I&N Dec. 291 (BIA 2002)[, overruled by Azanor v. Ashcroft, 364 F.3d 1013, 1020 (9th Cir. 2004)].

## II

We review the BIA's decision to deny a motion to reopen or to reconsider for abuse of discretion. See Infanzon v. Ashcroft, 386 F.3d 1359, 1362 (10th Cir. 2004).

2

"The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." Id. Under this standard, the BIA must explain its rationale regarding each of a petitioner's arguments. We will not "affirm on the theory that the Board necessarily considered whatever the petitioner asserted" because "this would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review." Turri v. I.N.S., 997 F.2d 1306, 1310 (10th Cir. 1993), superseded by statute on other grounds as stated in Escalera v. I.N.S., 222 F.3d 753, 756 (10th Cir. 2000). Simple recitation of rules of law and conclusory statements that a petition fails to make out a case are insufficient to demonstrate meaningful, reasoned decision-making. See, e.g., Mickeviciute v. I.N.S., 327 F.3d 1159, 1162 (10th Cir. 2003) (court was unable to determine from a case citation the basis for denial of the petition, and thus concluded that it could not "perform a meaningful review"); Turri, 997 F.2d at 1309 (remanding when the BIA listed relevant legal factors, stated it had reviewed the record, and denied petitioner's application). Even when the BIA delves into the facts of a case, we must be able to ascertain that it "cumulatively considered all the relevant evidence" when evaluating a motion to reopen. See Dulane v. I.N.S., 46 F.3d 988, 996 (10th Cir. 1995).

If a BIA order is summary or unclear, we will review the IJ's decision, either as the final agency action or to aid us in discerning the BIA's reasoning. See Yuk v. Ashcroft, 355 F.3d 1222, 1230 (10th Cir. 2010); Razkane v. Holder, 562 F.3d 1283, 1287

3

(10th Cir. 2009). "[W]hen seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." Uanreroro v. Gonzales, 443 F.3d 1197, 1204 (10th Cir. 2006). If, after examining the IJ's decision and the BIA's order, we cannot discern the agency's line of reasoning, we must remand to the agency for further explanation. See, e.g., Mickeviciute, 327 F.3d at 1162-63. We may not scour the record "for reasoning to support the BIA's decision because a court may not uphold an agency action on grounds not relied on by the agency." Id. at 1163 (quotations omitted); see also I.N.S. v. Orlando Ventura, 537 U.S. 12, 16 (2002).

Such judicial restraint serves at least two purposes. First, due process requires that petitioners, even non-citizens facing removal, receive "a reasoned explanation" for the rejection of their claims. Yuk, 355 F.3d at 1232. Second, it is a well-established general principle of administrative review that courts must not "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." Chenery, 318 U.S. at 88, 94. Chenery's rule thus secures the separation of powers among the three branches.

### III

The BIA may deny a motion to reopen for several reasons, including the petitioner's failure to establish a prima facie case for the relief sought. Mickeviciute, 327 F.3d at 1162 (citing Abudu, 485 U.S. at 104-05). To establish eligibility for withholding of removal under the CAT, an applicant must show "that it is more likely than not that he or she would be tortured if removed." 8 C.F.R. § 1208.16(c).

4

## A

Without analysis, the BIA order concludes that Bhattarai did not establish a prima facie case under the CAT. Its discussion of the CAT claim is four sentences long. After merely restating the new evidence—that the leader of the Maoist revolutionary party was elected prime minister—the order concludes with no further elaboration that Bhattarai has not met his "heavy burden" of showing that his case would be decided differently in light of the new evidence, because he failed to show that it is "more likely than not that he will be tortured." To be sure, the BIA correctly states the applicable legal standards. But it never applies those standards.[2] Consequently, it does not meet the minimum requirements we have set for a reasoned decision. See Infanzon, 386 F.3d at 1362; Mickeviciute, 327 F.3d at 1162-63.

In Mickeviciute, we also reviewed the denial a motion to reopen. Id. at 1161. The petitioner in that case contended that she received ineffective assistance of counsel and sought consideration of her diversity visa interview request as a remedy. Id. The BIA

---

[2] If any of the cited cases were factually analogous to Bhattarai's case, we might have a better idea of the agency's reasoning. However, the cases appear to be cited for the bare purpose of establishing the basic legal principles at work. Matter of Coelho discusses the petitioner's "heavy burden" to show that reopening would yield different results upon remand. 20 I&N Dec. at 473. The portion of Abudu cited similarly refers to Attorney General regulations disfavoring motions to reopen. 485 U.S. at 110. Ferry is a CAT case, regarding conditions in the United Kingdom, in which there had been no regime change. In re M-B-A- is the converse of this case, involving events that happened under a regime that was no longer in power. 23 I&N Dec. at 476, 478-79. Finally, Matter of J-E-, which has been overruled, see Azanor, 364 F.3d at 1020, unpacked the meaning of "torture" under the CAT, in the context of Haitian prison conditions. 23 I&N Dec. at 291. Absent some comparison of the facts in these cases, or application of their principles to Bhattarai's case, the BIA's analysis remains deficient.

5

denied the motion, but did not identify which of the Abudu factors compelled its decision. Id. at 1162. Although the dissent argued it was clear the BIA denied the petition because it failed to state a prima facie case, we rejected the use of post-hoc analysis. Id. at 1163 n.3. Relying on the Supreme Court's decision in Orlando Ventura, we remanded the case rather than substitute our reasoning for the BIA's. Id. 1164-65.

The BIA order before us is similarly unilluminating. Although the order at least names the Abudu factor it applied, and thus identifies the relevant standard, it does not explain why that factor precludes reopening Bhattarai's case. Indeed—and perhaps unsurprisingly given its brevity—what the order is missing is more telling than what it contains. The order does not contain a single clause beginning with "because" or an equivalent word or phrase. It does not analyze the individualized facts relating to Bhattarai's CAT claim. It does not reconcile its conclusions with the relevant findings of the IJ, which it states earlier in the order were not clearly erroneous.

Unfortunately, the IJ's decision does not help resolve the matter. In normal circumstances, when faced with a summary decision by the BIA, we turn to the decision of the IJ for clarification. See Razkane, 562 F.3d at 1287. However, in this case, the IJ's decision regarding the CAT was based entirely on a fact that is no longer true: that Bhattarai was a friend to the government of Nepal. In other words, the logic of the IJ decision supports Bhattarai's case for reopening his CAT claim. The IJ found that threats and acts of violence directed at Bhattarai and his family were not coming from the government of Nepal, but from the Maoists. Now, the two are one and the same.

6

No matter, says the government, the political shift in Nepal does not inevitably lead to the conclusion that it is more likely than not that Bhattarai will be tortured. See 8 C.F.R. § 1208.16(c). For example, it contended at oral argument that we should disregard threatening letters sent to Bhattarai, on Maoist letterhead, because we cannot necessarily link the Maoists who blew up Bhattarai's home with the Maoists who are now in power. The government's brief also goes to great lengths to explain why the articles Bhattarai submitted do not justify reopening.

But whether the government's proffered lines of reasoning have merit is not the question before us. Our review is limited to the rationale provided by the BIA and the IJ, both of which are deficient. In the wake of the Maoist ascent to power, the agency must grapple in a meaningful way with the new evidence and provide a reasoned decision. See Turri, 997 F.3d at 1310-11 (a mere recitation of the petitioner's submissions and statement that they have been reviewed and rejected is insufficient reasoning); Dulane, 46 F.3d at 995-96 (BIA order must reflect that it actually considered the new evidence in combination with the previous evidence). Its failure to do so in this case constituted an abuse of discretion.

**B**

The majority does exactly what Chenery forbids. It usurps the agency's role by reevaluating the evidence presented to the BIA, concluding that there is "evidence of improved conditions in Nepal" and that Bhattarai's submissions thus cannot support his prima facie CAT case. (Majority Order 11.) This is a rosy reading of Bhattarai's

7

evidence.  The articles certainly report some hopeful aspirations expressed by members of

Nepal's government and other diplomatic sources.  Yet the same record contains more

dire predictions.  One article remarks that the Maoists had "accepted ballot instead of

bullet to seize" power only a year before the elections.  Another explains how, in the lead-

up to election, the Maoists "never renounced violence and constantly spoke of urban-

based revolt" if the election failed.  A rival government minister was reportedly brutalized

by Maoists after success in a party election.  Facts like these suggest that even after the

elections, Maoist guerillas "could now become a band of crude, state-sponsored

enforcers," in the words of a BBC article among Bhattarai's submissions.  While

acknowledging that becoming part of the political mainstream may require pragmatism

by the Maoists, the same article condemns the overt violence perpetrated by the Maoists

against teachers and political enemies.

In other words, this evidence is open to multiple interpretations.[3]  In such cases, we

must resist our urge to break the tie, because we are reviewing the BIA's decision-

making, not revisiting its conclusion.  See Orlando Ventura, 537 U.S. at 17-18;

Mickeviciute, 327 F.3d at 1164-65.  In Orlando Ventura, the Supreme Court reversed a

---

[3] The majority accuses me of engaging in a performative
contradiction—suggesting that remand would violate Chenery and that I have "conducted
[my] own de novo inquiry . . . and concluded that [I] would have reached a different
decision than the BIA."  (Majority Order 13.)  To the contrary, I would not reach any
conclusion regarding the evidence in this case because the BIA has yet to do so.  The
government's proffered line of reasoning, echoed in the majority's discussion, is nowhere
to be found in the BIA's order.  Remand in this case could not "violate Chenery"
(Majority Order 13.); it is the only way to uphold Chenery.

8

circuit court that had conducted its own review of evidence submissions to the BIA: although the lower court asserted it was "compelled" to read the facts in a particular manner, it erred by failing to defer that conclusion until the agency provided its rationale. 537 U.S. at 15, 18. Abiding by the rule articulated in <u>Chenery</u>, 318 U.S. at 94, requires this restraint. Fact-finding is not our role, and "if our review is to have any meaning, it must be based on the Board's own articulation of its reasons for denying relief, not on our assumptions about what the Board considered and decided." <u>Turri</u>, 997 F.2d at 1310 (quotation omitted).

## IV

Although the IJ concluded that Bhattarai was in danger and had suffered at the hands of the Maoists, he rejected Bhattarai's CAT claim because Bhattarai was a friend to the government of Nepal. Despite Bhattarai's presentation of evidence that the very political party that threatened him is now the lawful government of Nepal, the BIA summarily rejected his petition to reopen. The cognitive dissonance created by this line of "reasoning" demands further explanation.

Especially in a case like this one, which "may have life or death consequences, . . . the costs of error are very high." <u>Albathani v. I.N.S.</u>, 318 F.3d 365, 378 (1st Cir. 2003). I would abide by <u>Chenery</u>'s rule, leave the fact-finding to the agency entrusted by Congress to make such decisions, and remand Bhattarai's case for further proceedings before the BIA. I would not, as the majority does, reject a petition based on my own reinterpretation

of the record.  Because the BIA abused its discretion by inadequately articulating its reasoning, I must respectfully dissent.