# United States Court of Appeals
## For the First Circuit

No. 11-1151

JAMES R. ELDREDGE,

Plaintiff, Appellant,

v.

TOWN OF FALMOUTH, MA; ANTHONY RIELLO, individually and in his
official capacity as the Chief of the Falmouth Police Department;
THOMAS MAGUIRE, individually and in his official capacity
as an Officer of the Falmouth Police Department; MICHAEL
SIMONEAU, individually and in his official capacity as an officer
of the Falmouth Police Department, a/k/a "The Seminole",

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Howard and Thompson,
Circuit Judges.

George F. Gormley, with whom George F. Gormley, P.C. was on
brief, for appellant.
Daniel G. Skirp, with whom Pierce, Davis & Perritano, LLP was
on brief, for appellees.

November 22, 2011

**HOWARD**, **Circuit Judge**. This is an appeal from the dismissal of a complaint alleging Section 1983 unreasonable seizure claims against two Falmouth, Massachusetts police officers. Plaintiff-appellant James R. Eldredge, who tragically was struck by a police cruiser during the course of the officers' response to a 911 call, challenges the district court's determination that qualified immunity shielded the officers from suit. Discerning no error, we affirm.

## I.  BACKGROUND

Because this appeal involves a dismissal for failure to state a claim, Fed. R. Civ. P. 12(b)(6), we recount the relevant facts based upon the well-pleaded allegations in the amended complaint. S.E.C. v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010) (en banc).

On a Wednesday evening in the summer of 2009, James Eldredge left his Falmouth home at approximately 10:30 p.m., accompanied by a friend, Jonathan Dubois, to walk to a nearby convenience store. Shortly thereafter, at around 10:50 p.m., the Falmouth Police received an unrelated 911 call reporting a domestic disturbance at a local residence. The call included, in part, the following exchange:

> Operator:  Falmouth Police recorded line, may I help you?
>
> Caller: . . . [Suspect] is now leaving in a little blue Toyota Tercel.  Um, we've had an argument.  He's been drinking.  I asked him to

leave.  The relationship's over.  He just shoved everything off the top of my refrigerator, smashed it all to the floor. The kids are here.  We've had DSS involved before and I just, I want him gone.  He's got all his stuff out.  I just want him to leave me alone.  I'm very afraid right now.

Operator:    Okay.  What's your address?

Caller:      xxx Sandwich Road number one.

After verifying her full name and that of the suspect, the caller stated that her ex-boyfriend was "outside trashing my porch right now."  Armed with this information, three patrolmen – defendant Michael Simoneau and defendant Thomas Maguire, as well as Officer Clifford Harris – set out to respond in three separate police cruisers.[1]

As the police responders drove towards the site of the disturbance these two heretofore unrelated events converged.  In

---

[1]     The Falmouth Police Department originally dispatched two patrol cars, manned by Officers Simoneau and Harris, to answer the call.  It became clear that Officer Maguire would be joining Simoneau and Harris when at or around 10:57 p.m. he radioed the station stating, "[w]e're going out shortly," and requesting the name for the domestic disturbance.  The dispatcher responded to Maguire's request by summarizing the disturbance as follows: "[Caller] the calling party; said [Suspect] who things are now over between them.  Um, [Caller] in fear [Suspect] has trashed the inside of [Caller's] house, tossed things off [Caller's] refrigerator. And [Suspect] now outside on the porch doing same."
As the plaintiff himself acknowledges, we cannot be certain based on this radio transcript whether Maguire was informed of the full details of the 911 call, including, in particular, the caller's mention of the alleged assailant's automobile.  We need not speculate one way or another.  Rather, we assume for present purposes that Maguire was so informed, because even with this assumption made in the plaintiff's favor, his claims are subject to dismissal for the reasons set forth *infra*.

-3-

the lead, Officer Maguire drove north along Sandwich Road at varying speeds over the posted limit, with his cruiser lights flashing and siren activated. His course would soon bring the officers abreast of Eldredge and Dubois, who were walking against traffic on the grass shoulder of the same road.

As Officer Maguire approached Eldredge and Dubois about half a mile from his destination, he suddenly decelerated. The cruiser "nose-dived" to a virtual stop alongside the pedestrians. Maguire simultaneously activated a spotlight aimed at the men, causing them to stop and squint at the blinding light. Through the open passenger side window, Maguire shouted: "Stand right there!" Both men complied.

Unfortunately, the story does not end there. Officer Simoneau had been following in his cruiser closely behind Maguire and rapidly closed the distance between the two vehicles when Maguire suddenly braked. Mere moments after Maguire shouted to Eldredge and Dubois, Simoneau's cruiser "rear ended" Maguire's, caromed off it, and hit Eldredge. Upon impact, Eldredge was wrapped onto the vehicle's hood and propelled several feet through the air, suffering serious injuries. According to the complaint, this collision occurred sometime between 10:57 and 10:59 p.m.

In the aftermath of this event, Eldredge sought recovery against Officers Maguire and Simoneau, the Town of Falmouth, and the chief of the Falmouth Police Department. Invoking 42 U.S.C.

§ 1983, Eldredge claimed that Maguire's show of authority constituted an unreasonable seizure of him because it amounted to a detention without adequate justification; that Simoneau also unreasonably seized him when, similarly lacking adequate justification, he struck Eldredge with his police cruiser; and that the Town and its police chief failed to adequately train their personnel on how to safely respond to incidents reported to the police. In addition to the federal claims, Eldredge alleged parallel state civil rights violations, see Mass. Const. art. XIV; Mass. Gen. Laws ch.12, § 11(I), as well as a state law tort claim based on the officers' alleged negligence and recklessness during the event in question, Mass. Gen. Laws ch. 258, § 2.

The defendants moved to dismiss Eldredge's claims pursuant to Fed. R. Civ. P. 12(b)(6). The district court granted the motion with respect to the federal claims, concluding that the individual officers were entitled to qualified immunity and that the failure to train claims were therefore foreclosed, as well. With only state law claims remaining, the district court declined to exercise supplemental jurisdiction and remanded the matter to state court. This timely appeal ensued.

## II. ANALYSIS

On appeal, the plaintiff pursues only his Section 1983 claims against the individual officers. Accordingly, our review is

limited to an assessment of whether the district court erred in dismissing those claims on qualified immunity grounds.

## A. Standard of Review

We review de novo an order of dismissal for failure to state a claim. Tambone, 597 F.3d at 441. In conducting this review, "we accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Artuso v. Vertex Pharmaceuticals, Inc., 637 F.3d 1, 5 (1st Cir. 2011) (citing Tambone, 597 F.3d at 441).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "[t]he plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." Id. Unless the alleged facts push a claim "across the line from conceivable to plausible," the complaint is subject to dismissal. Id. at 1951 (quoting Twombly, 550 U.S. at 570).

**B. Qualified Immunity**

The doctrine of qualified immunity is designed to "balance[] two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). We apply a two-prong analysis in determining whether this balance weighs in favor of granting a defendant qualified immunity. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). We ask "(1) whether the facts alleged . . . by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right at issue was 'clearly established' at the time of the defendant's alleged violation." Id. (citing Pearson, 555 U.S. at 232). A right is "clearly established" if, given the legal contours of the right allegedly violated and the facts of the particular case, a reasonable officer would have understood that his conduct violated that right. Id. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

Applying that framework to this case, the claim against Officer Simoneau is readily dispensed with under the first prong of the analysis. The plaintiff contends that Simoneau seized him by

-7-

striking him with his police cruiser and did so without adequate justification, thereby effecting an unreasonable seizure in violation of the Fourth Amendment. This argument fails at the outset.

To constitute a seizure implicating the Fourth Amendment, there must be an "intentional acquisition of physical control." Brower v. County of Inyo, 489 U.S. 593, 596 (1989)(emphasis added); see also Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 794-95 (1st Cir. 1990). The plaintiff acknowledges as much and concedes that there are no facts from which to infer that Simoneau intended to seize him, but he argues that we should impute Maguire's intent to conduct an investigatory stop to Simoneau. Even were we to indulge this exhortation, however, it would not be enough. The Supreme Court has made clear that a Fourth Amendment seizure does not take place "whenever there is a governmentally caused termination of an individual's freedom of movement . . . , nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement . . . , but only when there is a governmental termination of movement through means intentionally applied." Brower, 489 U.S. at 596-97 (emphasis in original); see also, e.g., Horta v. Sullivan, 4 F.3d 2, 10 (1st Cir. 1993) (holding that no seizure occurred where police officer did not intend pursuit to end by means of collision with another police vehicle). There are no facts alleged in the complaint to support

-8-

the inference that Simoneau intended to stop the plaintiff by striking him with his cruiser. Quite the contrary, the allegations that Simoneau had been following Maguire at high speeds and "rear-ended" Maguire's cruiser before "carom[ing]" into the plaintiff lead to the undeniable conclusion that the collision was unintentional. As such, the complaint fails to allege a colorable claim of constitutional dimension against Simoneau.

The plaintiff attempts to blunt the force of this conclusion by invoking the joint tortfeasor doctrine. With this invocation, he appears to advance the argument that Simoneau acted as part of a "team effort" with Maguire to respond to the 911 call and should therefore be held jointly responsible for what he claims were the foreseeable consequences of their miscalculated efforts. Eldredge seeks support for this novel application of the joint tortfeasor doctrine from our decision in Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989). That case does not, however, stand for the proposition that an officer's participation in a group operation, without more, is sufficient grounds for imputing liability for constitutional injuries arising out of that effort. In reaching the conclusion in Gutierrez-Rodriguez that two members of a police squad could be deemed the proximate cause of an automobile driver's injuries notwithstanding that the bullet that ultimately struck the driver came from a weapon fired by another squad member, we emphasized that each member of the squad had

-9-

alighted from an unmarked police car and approached the driver's parked automobile in plainclothes with weapons drawn and ready to fire. 882 F.2d at 560-61. Each of the officers participating in this "team effort" had, in other words, intentionally engaged in a series of acts that would foreseeably result in some member of the team inflicting constitutional injury. The same simply cannot be said of Officer Simoneau's actions here.[2]

Turning to the claim against Maguire, we first note that it is not mandatory to address the qualified immunity prongs sequentially. Pearson, 555 U.S. at 236. Because a finding that a right was not "clearly established" under the second prong of the analysis is sufficient to warrant a grant of qualified immunity, see id. at 236-37, discussion of the first prong will in some cases result "in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case," id. We therefore proceed directly to the "clearly

---

[2] To the extent that Simoneau's "shadowing of Maguire's cruiser created a situation in which it was foreseeable that Simoneau would be unable to safely stop in the event that Maguire might have reason to make a sudden stop," the plaintiff colorably has alleged a tort, for which the appropriate relief is a state law tort suit rather than federal civil rights litigation. Pursuant to the district court's order, that claim now resides in state court.

We note that the defendants have moved to strike transcripts of two police radio calls that were not part of the record before the district court but which the plaintiff attached as exhibits to his reply brief in an attempt to bolster his "team effort" theory. Assuming without deciding that we could consider the transcripts, they do not change our analysis. Accordingly, the defendants' motion to strike has become moot.

established" prong of the analysis in assessing the claim against Maguire.

The defendant acknowledges, as he must, that the Fourth Amendment right to be free from investigatory stops in the absence of reasonable suspicion was clearly established long before this tragic event occurred. See, e.g., United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry v. Ohio, 392 U.S. 1, 30 (1968). But the relevant inquiry for qualified immunity purposes is not whether reasonable suspicion to conduct the stop in fact existed, but whether a reasonable officer could have believed that it did. Put another way, qualified immunity exists "so long as the presence of [reasonable suspicion] is at least arguable." McInnis v. Maine, 638 F.3d 18, 22 (1st Cir. 2011) (quoting Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991)). Accordingly, Maguire urges that, even assuming that he effected an investigatory stop of the plaintiff without reasonable suspicion, he is nonetheless entitled to qualified immunity because the unlawfulness of the detention would not have been apparent to a reasonable officer standing in his shoes. We agree.

An investigatory stop, commonly known as a Terry stop, "requires only articulable facts giving rise to a reasonable suspicion that a suspect may be involved in criminal activity." Morelli v. Webster, 552 F.3d 12, 20 (1st Cir. 2009) (citations omitted). Here, Officer Maguire was responding to a 911 call in

-11-

which a fearful caller relayed an urgent situation that was still unfolding – namely, that her ex-boyfriend, who had been drinking, had already "trashed" the inside of her home where children were present and at the time of the call was continuing his destructive behavior outside. As Maguire drove towards the site of the disturbance, he spotted the plaintiff, a male, walking on Sandwich Road after dark on a weeknight, just minutes after a fresh 911 call originating only half a mile away. These facts could reasonably support the suspicion that the plaintiff was the caller's ex-boyfriend leaving the site of the disturbance. Officer Maguire was therefore entitled to qualified immunity.

The plaintiff resists this conclusion on two grounds. We find neither persuasive.

First, Eldredge emphasizes that he did not match the 911 caller's description of her alleged assailant, an individual male who would presumably be leaving her residence in a blue Toyota Tercel. Rather, he was found accompanied by a friend and traveling by foot at a distance that, Eldredge argues, one could not have reasonably walked in the seven to nine minutes that had passed since the time of the call. To be sure, these factors may have reduced the likelihood that the plaintiff was the alleged assailant. But reasonable suspicion requires "sufficient probability, not certainty." New Jersey v. T.L.O., 469 U.S. 325, 346 (1985) (quoting Hill v. California, 401 U.S. 797, 804 (1971)).

-12-

Particularly when viewed through the lens of an officer making a split-second judgment, see <u>Graham</u> v. <u>Connor</u>, 490 U.S. 386 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments . . . ."), we cannot say that Maguire's assessment was so obviously misguided that no reasonable officer could have reached the same conclusion.

Second, Eldredge urges us to evaluate Officer Maguire's actions in the context of his "responsibility to the 911 caller." He argues that the responding officers' paramount responsibility was to locate and protect the caller, not to conduct an investigatory stop of someone whom the caller could readily identify for questioning at a later time. In effect, he asks us to consider whether Maguire's course of action was the most sound one under the circumstances. We decline this invitation to impose a requirement that the Fourth Amendment does not. <u>Cf.</u> <u>United States</u> v. <u>LaFrance</u>, 879 F.2d 1, 10 (1st Cir. 1989) (citing <u>United States</u> v. <u>West</u>, 731 F.2d 90, 93 (1st Cir. 1984)) ("Simply proving that more efficacious approaches were available does not prove that the method actually used was unreasonable.").

### III. CONCLUSION

The judgment of the district court is **<u>affirmed</u>**.