# United States Court of Appeals
## For the First Circuit

No. 12-1642

ROCKET LEARNING, INC.,

Plaintiff, Appellant,

LEARNING ALLIANCES, LLC; CURRÍCULOS EDUCATIVOS Y PROYECTOS DE
DISEÑO INSTRUCCIONAL, INC., a/k/a CEPDI, INC.; BEST EDUCATION
TRENDS, INC.; NIGHT STAR JOB COLLEGE, INC.,

Plaintiffs,

v.

JESÚS RIVERA-SÁNCHEZ, in his personal capacity and as the
Secretary of the Puerto Rico Department of Education,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Rafael Escalera Rodríguez, with whom Amelia Caicedo Santiago,
Carlos M. Hernández Burgos, and Reichard & Escalera were on brief,
for appellant.
Margarita L. Mercado Echegaray, Attorney, Puerto Rico
Department of Justice, with whom Carlos E. Cardona Fernández,
Claudio Aliff Ortiz, Eliezer Aldarondo Ortiz, and Aldarondo & López
Bras were on brief, for appellee.

April 18, 2013

**LYNCH, Chief Judge**.    Rocket Learning, Inc., an educational services provider based in Puerto Rico, appeals from a district court order dismissing with prejudice this civil rights action, filed pursuant to 42 U.S.C. § 1983, against defendant Jesús Rivera-Sánchez, personally and in his official capacity as Puerto Rico's Secretary of Education.

The suit alleges constitutional violations arising from a 2010 change to the certification and enrollment process for providers in the Commonwealth's Supplemental Educational Services program, funded under federal law.  The claim is essentially that this change unilaterally and arbitrarily disadvantaged the appellant, a certified provider, vis-à-vis its competitors.  The district court found that the amended complaint lacked sufficiently well-pled facts to support a plausible claim that the defendant had violated Rocket Learning's equal protection, due process, or commercial free speech rights.  We now affirm the district court's decision on the alternative ground that the defendant was entitled to qualified immunity as to all claims.

I.

Title I, Part A of the Elementary and Secondary Education Act of 1965, as amended by the No Child Left Behind Act of 2001, makes available federal funding for state educational agencies to provide, inter alia, various academic opportunities to students from low-income families.  See No Child Left Behind Act of 2001,

-2-

Pub. L. No. 107-110, §§ 1111-1117, 115 Stat. 1425, 1444-1501 (2002) (codified at 20 U.S.C. §§ 6311-6317). One of these opportunities, the Supplemental Educational Services (SES) program, entitles eligible students to receive tutoring services at no cost from a private or public organization certified by the state and selected by the students' guardians. 20 U.S.C. § 6316(e)(1); 34 C.F.R. § 200.45. The Commonwealth of Puerto Rico has participated in the SES program since 2003, as administered by the Puerto Rico Department of Education (PRDE).

Each academic year, the PRDE conducts a three-stage enrollment procedure to match eligible students with SES providers. First, in the certification process, prospective SES providers submit an annual certification or re-certification proposal, through a Request for Qualification (RFQ), which determines their eligibility to enroll students in the upcoming year. Such proposals must comply with requirements enumerated in the RFQ application and in the Commonwealth's SES Procedures Manual ("SES Manual"), and cannot be amended after submission except as requested by the PRDE.

After certification, SES providers compete amongst themselves to attract eligible students and their guardians to sign up for their tutoring services during the pre-enrollment process. As required by federal regulation, the PRDE initiates pre-enrollment by compiling a roster of certified providers on its

website for SES participants to evaluate. Additionally, providers hold informational meetings, independently and through local schools, to describe the services that they will offer to students in the upcoming year. At the close of pre-enrollment, guardians fill out a form SES-101 to identify, in order of preference, the three SES providers with whom they would like their student to work.

Finally, in the pre-test process, students are administered tests to assess their individual needs, which providers discuss with each student's guardians. The guardians and a provider then submit a form SES-102 to the PRDE, which memorializes their agreement as to that student's needs and the services the provider will furnish to him or her. Once the SES-102 forms are approved, the PRDE executes a contract with the relevant provider and services ordinarily begin within two to four days.

This case concerns the Commonwealth's SES enrollment procedure for the 2010-2011 academic year. As initially set forth by the PRDE, the entire process was to span no more than four months. It began on June 11, 2010, the deadline for submitting an RFQ application, and ended on October 15, 2010, the date on which the PRDE would enter into an SES contract with the second provider identified on the form SES-101 if the preferred provider had not begun administering tutoring services to the relevant student.

-4-

Rocket Learning submitted its certification proposal for the 2010-2011 academic year on June 9, 2010. The SES Manual in place at that time, the "Old Manual," limited the kinds of prizes that providers could award to their students as end-of-course gifts to "medals, trophies, certificates, [and] educational materials, such as educational games, manipulative toys, books, and dictionaries," and prohibited the promotion of any end-of-course gifts during the enrollment process. Importantly, neither the Old Manual nor the RFQ application required certification proposals to list specifically all electronic devices that would be used as part of a provider's tutoring program.[1]

The PRDE approved Rocket Learning's certification proposal in August 2010, and thereafter SES providers began promoting their services in anticipation of the pre-enrollment process. Despite the Old Manual's restrictions, some SES providers sought to entice potential students during this period by offering electronic devices as end-of-course gifts, making these providers

---

[1] The RFQ application did require certification proposals to describe the provider's teaching methodology, including any "teaching material[s]" that the provider planned on using in its tutoring modules. See, e.g., R. App. at 428 ("Describe any additional teaching material you plan on using and have not described before. 50 word limit."); id. at 429 ("Evidence the educational teaching materials by grade and by subject that correspond to the students' needs that have been identified."). The Old Manual also required providers to maintain a "bank of curricula and/or teaching modules[,]" including the "educational materials for each module or curriculum." R. App. at 452. However, the Old Manual did not state whether or where these teaching materials had to be disclosed.

more attractive.  The SES Providers Association -- a not-for-profit organization to which most of the Commonwealth's SES providers belong, including the appellant -- sent a letter to the PRDE informing it of these improper promotional activities and requesting that the agency enforce the Old Manual.

On September 28, 2010, defendant Jesús Rivera-Sánchez (the "Secretary") issued a superseding version of the SES Manual, the "New Manual."  The New Manual required for the first time that all technological devices to be used in a provider's teaching process be specified in its certification proposal.  It also amended the Old Manual's provision concerning end-of-course gifts, first by explicitly stating that "[o]ffering incentives during the enrollment [process] . . . is strictly prohibited[,]" and second by removing the sentence stating that the giving of "[a]ny other [end-of-course] article or gift [not listed in the SES Manual] is strictly prohibited."  Notwithstanding these changes, the PRDE did not request that providers submit amended certification proposals consistent with the New Manual.

The pre-enrollment process took place between October 4 and October 21, 2010.  According to the complaint, approximately eight of the fifty participating SES providers disregarded the New Manual's prohibition on the promotion of end-of-course electronic gifts.  These organizations experienced considerable increases over their traditional enrollment numbers, while the remaining providers

suffered corresponding enrollment decreases. Following written protests and a demonstration at the PRDE's headquarters, the Secretary met on October 20, 2010 with some of the SES providers disadvantaged during this pre-enrollment process.

The PRDE annulled the first pre-enrollment period on November 4, 2010, and scheduled a second for December 6 through December 10, 2010. On November 16, the PRDE circulated a questionnaire by email to a group of approximately twenty-five SES providers to clarify the relationship between the electronic devices included or referred to in their respective original certification proposals and the provider's instructional services. The PRDE's Technology and Curriculum Unit evaluated each organization's answers to determine whether, for purposes of the SES Manual, the technological devices in question constituted "educational material" that could be promoted during the enrollment process. Rocket Learning was not among the recipients of the November 16 email, although its proposal did include as teaching materials the use of audiobooks, videos, and music requiring the use of electronic devices.

On December 4, 2010, two days before the start of the second pre-enrollment period, the PRDE published a full-page ad in a local newspaper notifying eligible students that they could retain any of the educational materials, including technological devices, that they used during the SES program. The PRDE also sent

a December 6 email instructing all certified providers that "educational material specifically included in the provider's [certification proposal] . . . [would] not be considered an incentive or reward for purposes of compliance with the rules of the Department of Education[,]" and therefore could be promoted and given away as end-of-course gifts.

As a result of these various changes, only those providers that had received the November 16 email were permitted to promote electronic devices during the December pre-enrollment process. At the close of this process, Rocket Learning's enrollment numbers had fallen by approximately fifty to sixty percent from the previous year's.

## II.

Within days, on December 21, 2010, Rocket Learning, along with four other SES providers (collectively, "plaintiffs"), filed suit against the Secretary, in his personal and official capacities, alleging that the PRDE had intentionally and arbitrarily favored a select number of certified providers during the 2010-2011 SES enrollment process, depriving the plaintiffs of their constitutional rights to equal protection of the law, substantive and procedural due process, and commercial free speech. The plaintiffs sought injunctive relief and monetary damages, pursuant to 42 U.S.C. § 1983, and a declaratory judgment finding

the Secretary's actions unconstitutional, pursuant to 28 U.S.C. § 2201.

On the same day, the plaintiffs also filed a motion for a preliminary injunction, see Fed. R. Civ. P. 65(a), which was referred to a magistrate judge along with that part of the defendant's motion to dismiss, filed on January 18, 2011, concerning the court's subject matter jurisdiction. On February 12, 2011, the magistrate judge issued a Report and Recommendation advising the district court to deny both motions. In relevant part, the magistrate judge found that some of the plaintiffs, including Rocket Learning, had shown a likelihood of success on only their equal protection claim, but that a preliminary injunction was nonetheless inappropriate because the plaintiffs' injuries arising from that claim were not irreparable. The district court adopted the magistrate judge's findings and recommendations in full on March 24, 2011.

After the plaintiffs filed an amended complaint[2] on March 25, 2011, the defendant renewed his motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that (1) the complaint failed to articulate a plausible § 1983 claim for any of the alleged constitutional violations, (2) declaratory and monetary relief against the Secretary in his official capacity were barred

---

[2] The plaintiffs amended their complaint to allow plaintiff Learning Alliances, LLC, to specify "the real damages [it] suffered . . . because of the arbitrary and discriminatory actions of the Secretary of the [PRDE]." This amendment does not bear on Rocket Learning's appeal.

by the Eleventh Amendment, and (3) the Secretary was entitled to qualified immunity on the plaintiffs' individual capacity claims. The matter was again referred to the same magistrate judge.

On August 13, 2011, the magistrate judge issued a Report and Recommendation advising the district court to dismiss all claims[3] except for the plaintiffs' equal protection claim against the Secretary in his personal capacity.[4] Rocket Learning, Inc. v. Sánchez, Civil No. 10-2252(FAB), 2011 WL 7645795, at *14 (D.P.R. Aug. 13, 2011). After the parties filed their respective objections to the Report and Recommendation, the district court, on de novo review, issued an opinion and judgment on March 30, 2012,

---

[3] The magistrate judge concluded that the plaintiffs' claims for relief against the Secretary in his official capacity were moot or foreclosed by the Eleventh Amendment, Rocket Learning, Inc. v. Sánchez, Civil No. 10-2252(FAB), 2011 WL 7645795, at *5, *14 (D.P.R. Aug. 13, 2011), and that the plaintiffs had failed to state a claim on their due process and commercial free speech claims against the Secretary in his personal capacity, id. at *11-13.

[4] As to that claim, the magistrate judge found that the plaintiffs had sufficiently alleged (a) that they were "substantially similar to other providers that included technology in their proposals and that received the November 2010 e-mail," id. at *8, (b) that the Secretary had "intentionally discriminated against them" during the 2010-2011 enrollment process by not allowing the plaintiffs to promote electronic devices as end-of-course gifts, id. at *9-10, and (c) that the Secretary's procedures in so doing were, "at times, retroactive" and "irrational," id. at *10. Moreover, the magistrate judge concluded that the Secretary was not entitled to qualified immunity because he could not have reasonably thought that treating the plaintiffs in an arbitrary and irrational way was consistent with the Equal Protection Clause. Id. at *14.

dismissing the complaint in its entirety. Rocket Learning, Inc. v. Rivera-Sánchez, 851 F. Supp. 2d 384, 397-98 (D.P.R. 2012).

Contrary to the magistrate judge, the district court found that the plaintiffs failed to state an equal protection claim. Specifically, the court found that the plaintiffs had not shown: (1) that they were similarly situated to the provider recipients of the November 16 email that were allowed to promote electronic devices, id. at 393; (2) that there was no rational basis for the Secretary's actions, id. at 393-94; and (3) that the Secretary possessed the requisite discriminatory intent to support an equal protection claim, id. at 395. Additionally, because the plaintiffs failed to establish a viable equal protection claim, the district court found that the issue of qualified immunity was moot. Id. at 397. This timely appeal followed.

III.

Rocket Learning challenges only the district court's dismissal of the three constitutional claims for money damages alleged as the basis for its § 1983 action against the Secretary in his personal capacity. We review a dismissal for failure to state a claim de novo, accepting all well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor. Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Defendant asserts that the district court properly concluded that the complaint failed to allege any plausible constitutional violation. Alternatively, the Secretary argues that even if the complaint had done so, it was properly dismissed because he was entitled to qualified immunity.

"In reviewing a Rule 12(b)(6) dismissal, 'we are not wedded to the [district] court's rationale and may affirm . . . on any basis made apparent from the record.'" Cook v. Gates, 528 F.3d 42, 48 (1st Cir. 2008) (first alteration in original) (quoting McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006)); see also Uphoff Figueroa v. Alejandro, 597 F.3d 423, 429 (1st Cir. 2010); Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009). We affirm on the ground that the defendant was entitled to qualified immunity. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 52 (1st Cir. 2009); Beckles v. City of New York, 492 F. App'x 181, 182 (2d Cir. 2012).

A.      The Doctrine of Qualified Immunity

The doctrine of qualified immunity protects a state official from liability for damages under § 1983 where her conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982); see Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004). Because the doctrine serves as "an immunity from suit rather than a mere defense to liability[,] . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Accordingly, qualified immunity should be resolved at the earliest possible stage of litigation. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).

The two-step procedure for assessing a plea of qualified immunity at the motion to dismiss stage is well-rehearsed. See, e.g., Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 532-33 (1st Cir. 2011); Eldredge, 662 F.3d at 104-05. On the basis of the pleadings, we must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado, 568 F.3d at 269 (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

The "clearly established" inquiry, in turn, has two related aspects. One aspect focuses exclusively on the clarity of the law at the time of the alleged violation. "To overcome qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (alteration in original) (quoting Anderson v. Creigton, 483 U.S. 635, 640 (1987)).

-13-

The other aspect considers the specific facts of the case at bar. The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted).  Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  Maldonado, 568 F.3d at 269 (first alteration in original) (emphasis added) (quoting Brosseau, 543 U.S. at 199) (internal quotation marks omitted).

In Pearson v. Callahan, 555 U.S. 223, the Supreme Court recognized that "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify."  Id. at 238-39.  As such, federal courts have discretion to administer the components of the qualified immunity test in the order that they determine "will best facilitate the fair and efficient disposition of each case."  Id. at 242.  Where the court can "quickly and easily decide that there was no violation of clearly established law," it need not "turn[] to the more difficult question [of] whether the relevant facts make out a constitutional question at all."  Id. at 239.

B.          The Equal Protection Claim

Rocket Learning argues that the Secretary violated the Equal Protection Clause of the Fourteenth Amendment by improperly favoring a select group of SES providers during the 2010-2011 enrollment process.[5]  Specifically, the complaint asserts that, by way of the PRDE's November 16 and December 6 emails, the Secretary arbitrarily created two classes of otherwise similarly situated providers: those permitted to promote and award electronic devices and those not so permitted.  This classification, appellant contends, was "wholly irrelevant" to the purposes of the SES program and cannot withstand even the lowest level of equal protection scrutiny.[6]

---

[5] In connection with its equal protection claim, Rocket Learning also asserts that the district court erred by declining to consider the preliminary injunction hearing record.  We disagree. It is well established that at the motion to dismiss stage, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see Fed. R. Civ. P. 12(d).  The plaintiffs did not request such a conversion before the magistrate judge, Rocket Learning, 2011 WL 7645795, at *6, and we conclude, as the district court did, that the preliminary injunction record does not fall within any of the narrow exceptions to this rule, Rocket Learning, 851 F. Supp. 2d at 391; see also Watterson, 987 F.2d at 3-4 (describing exceptions and collecting cases).

[6] Classifications that impinge on "fundamental rights," including free speech rights, are subject to strict scrutiny and will only be upheld if "precisely tailored to serve a compelling governmental interest."  Plyler v. Doe, 457 U.S. 202, 217 (1982). Rocket Learning argues unpersuasively that this court should apply strict scrutiny to the Secretary's purported classification system, which incidentally restricted the plaintiffs' speech-related

The Equal Protection Clause requires that "all persons similarly situated . . . be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); see Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). Accordingly, to establish a plausible equal protection claim, a plaintiff not relying on typically impermissible bases for classification (e.g., race, religion, etc.) must show that it was "intentionally treated differently from others similarly situated, that no rational basis exist[ed] for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006).

The district court concluded that Rocket Learning failed to state a plausible equal protection claim. We do not decide that question. Rather, the appellant's claim falters on the "clearly established" prong of the qualified immunity test. The record establishes that a reasonable official in the Secretary's position could have rationally concluded that his actions were consistent with the Constitution.

At the time Rocket Learning submitted its SES proposal, the RFQ application required providers to describe any "teaching material[s]" that they intended to use as part of their tutoring

_____

promotional activities. For reasons set forth in our discussion of Rocket Learning's commercial free speech claim, and in keeping with the decisions of both the magistrate and district court judges, we decline to do so. See Rocket Learning, 851 F. Supp. 2d at 394; Rocket Learning, 2011 WL 7645795, at *9.

-16-

services, and the Old Manual, in turn, permitted these materials to be awarded as end-of-course gifts. See supra note 1. On the Secretary's account, these rules promoted the PRDE's legitimate interest in ensuring that guardians selected providers during pre-enrollment based upon the merits of their educational services, rather than the quality of their giveaways.

When presented with allegations just weeks before the first pre-enrollment process that some providers were violating these rules, the Secretary set out to clarify the contours of the rules and to determine whether the allegations were true. The Secretary invalidated the first round of pre-enrollment and set up a second, creating time pressures on all, including himself, to conduct a new certification inquiry aimed at assessing which providers should be permitted to promote and award electronic devices as "educational material[s]."

The Secretary asserts that Rocket Learning was not among the recipients of the November 16 email because it had not included the sorts of electronic devices in its certification proposal that warranted additional inquiry. Although Rocket Learning's proposal did indicate its intention to use music, videos, and audiobooks for some of its tutorial modules, it did not describe the types or quantities of technological devices that students would use to play these materials. For example, the defendant points out that "since the use of one CD player is enough to provide music or to play the

audio-book for a whole classroom," it would be unreasonable for the PRDE to assume "that plaintiffs intended to give a CD player to each student." As such, the Secretary did not view the plaintiffs as within the category intended to receive the email.

At first blush, the Secretary's explanation for his decision is not unreasonable. Indeed, the district court concluded that the explanation was sufficient to establish that the plaintiffs had not shown themselves to be similarly situated to the recipients of the November 16 email. Rocket Learning, 851 F. Supp. 2d at 393. We agree that a reasonable official in the Secretary's position could think that the groups were not similarly situated. But even if we found that the groups were similarly situated, that would not, taken alone, defeat qualified immunity.

Rocket Learning was also required to show that, in misapplying the prohibitions in question, the Secretary acted with a discriminatory purpose, which "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979). The appellant acknowledges that at this stage of the litigation, it has not uncovered the "real motivation" for the Secretary's purportedly irrational and discriminatory conduct. Rocket Learning, 851 F. Supp. 2d at 395. Instead, Rocket Learning asks the court to infer the existence of an improper

motivation from the Secretary's last-minute rule changes and retroactive application of the New Manual's provisions.

The PRDE does not say that its administration of the 2010-2011 SES enrollment process was ideal. However, these inadequacies existed against the backdrop of the exigent circumstances the Secretary faced, the PRDE's legitimate interest in enforcing the prohibitions in question, and the seemingly non-discriminatory explanation that the Secretary furnished for treating the appellant as he did.

This court has recognized that the "malice/bad faith standard should be scrupulously met," Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen of Town of Randolph, 932 F.2d 89, 94 (1st Cir. 1991) (quoting LeClair v. Saunders, 627 F.2d 606, 611 (2d Cir. 1980)) (internal quotation mark omitted), and that cases satisfying this standard are "infrequent," id. With this in mind, and in light of the idiosyncratic circumstances surrounding the 2010-2011 SES enrollment process, we conclude that the appellant's allegations were insufficient to show that the Secretary's actions violated clearly established law under the second prong of the qualified immunity test.

C.      The Procedural Due Process Claim

Rocket Learning also claims that the Secretary violated the procedural component of the Fourteenth Amendment's Due Process

Clause.[7]  To establish a procedural due process violation, a plaintiff must show that (1) it was deprived of a protected property interest, and (2) the procedures attendant to that deprivation were constitutionally inadequate.  See González-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010); Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007).

Rocket Learning asserts a property right, arising from its SES certification, to participate in a fair and non-discriminatory pre-enrollment process.  The Secretary is said to have deprived the appellant of this property interest without the process due by failing to provide the appellant with adequate notice of the changes regarding the prohibitions on promoting and awarding electronic devices or with an opportunity to challenge the allegedly discriminatory enforcement of these changes.  See Rocket Learning, 851 F. Supp. 2d at 395.

The district court rejected this claim, finding that, under Puerto Rico law, "a bidder for a contract with the government does not acquire a property interest until the contract has been formalized."  Id. (emphasis added).  The district court relied on the Supreme Court of Puerto Rico's decision in Cancel v. Municipio de San Juan, 1 P.R. Offic. Trans. 416 (1973).  There, an initially

_____

[7]  While the complaint alleged violations of both the procedural and substantive components of the Due Process Clause, Rocket Learning has challenged only the district court's dismissal of its procedural due process claim.

successful bidder for a government contract sought to enjoin the Municipality of San Juan from subsequently awarding that contract to another bidder. The court dismissed the case, holding that Cancel had no claim to entitlement because "an agency has the right to revoke the award of a contract at any time before the corresponding contract is entered into." Id. at 422 (quoting Cussiniano v. Commonwealth, 100 P.R.R. 333 (P.R. 1971)). Similarly, in the circumstances of this case, the PRDE would not enter into a contract with Rocket Learning until one or more students actually enrolled in its tutoring program, i.e., after the pre-enrollment process was already completed.

Rocket Learning attempts to distinguish Cancel, arguing that its SES certification is more akin to a license than a contract, and relying on a series of cases recognizing that a state-issued license may vest in its recipient a property interest in the rights granted therein. See, e.g., Bell v. Burson, 402 U.S. 535, 539 (1971); González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011); Indus. Safety Equip. Ass'n, Inc. v. EPA, 837 F.2d 1115, 1121 (D.C. Cir. 1988). This argument, not raised in the district court, see Rocket Learning, 851 F. Supp. 2d at 395-96 ("[P]laintiffs do not attempt to distinguish Cancel from the situation before the Court . . . ."), is unpersuasive.

Each of the cases cited involved a formally issued license or certification that unambiguously conferred some property

-21-

interests to its owner.  See, e.g., Indus. Safety Equip., 837 F.2d at 1122 ("There is no question that appellants possess cognizable property interests in their respirator certifications.").  Additionally, in Bell and González-Droz, it was also clear that the state had deprived the plaintiff of the particular property interest at issue because the license had been revoked entirely. Bell, 402 U.S. at 539 (suspension of driver's license); González-Droz, 660 F.3d at 7 (suspension of medical license).[8]

In contrast, Rocket Learning cites no authority treating SES certifications as state-issued licenses, let alone licenses conferring a property interest in a particular type of pre-enrollment procedure.  Even if the appellant had done so, and had shown that the PRDE deprived it of this right,[9] there is nothing in

_____

[8] Indeed, to the extent the appellant's claim is at all like the cited cases, it is most similar to Industrial Safety, in which the D.C. Circuit concluded that the plaintiffs were not deprived of any property interest secured by their certifications to sell certain asbestos-protection respirators after the EPA published a guide suggesting that these respirators were less effective than others available on the market.  See 837 F.2d at 1122 ("The EPA . . . [has] not revoked any certificates; rather, [it has] only introduced new information into the market with a possible effect on competition.").

[9] Before the district court, the plaintiffs argued that the Secretary's actions amounted to a "de facto" decertification, claiming that "their SES certification [was] essentially 'worthless' without the opportunity to compete with other providers--on equal terms--to enroll students in their programs." Rocket Learning, 2011 WL 7645795, at *11.  The appellant has not attempted to develop this argument on appeal, however, and so it is waived. See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 492 (1st Cir. 2012), cert. denied, 2013 WL 1091770 (U.S. Mar. 18, 2013) (finding due process claim waived where "[b]asic

-22-

the record to suggest that the process attendant to that deprivation fell short of any requirements announced under clearly established law. Indeed, Rocket Learning offers no authority, either from the relevant case law or from the PRDE's own publications concerning the SES program, announcing procedural guarantees in excess of those employed by the Secretary.[10]

Since the property interest asserted here is dubious, and there has been no showing that the process attendant to its alleged deprivation was deficient, we conclude that the appellant's allegations do not support a plausible due process claim as required under the first prong of the qualified immunity test.

D.        The Commercial Speech Claim

We more quickly dispatch Rocket Learning's remaining claim that the Secretary violated its First Amendment commercial speech rights. Commercial speech, or "expression related solely to the economic interests of the speaker and its audience," is ordinarily accorded less First Amendment protection than are other forms of constitutionally guaranteed expression. El Día, Inc. v. P.R. Dep't of Consumer Affairs, 413 F.3d 110, 115 (1st Cir. 2005) (quoting Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of

---

issues necessary to assess [it]" had not been addressed or developed).

[10] Moreover, as the Secretary highlights, there is no dispute that the RFQ application permitted the PRDE to ask for clarification regarding SES certification proposals.

<u>N.Y.</u>, 447 U.S. 557, 561 (1980)) (internal quotation marks omitted). Nonetheless, under the <u>Central Hudson</u> framework, where it is "neither misleading nor related to unlawful activity," commercial speech is safeguarded from unwarranted government intrusion. 447 U.S. at 564.

Rocket Learning appears to assert that it had a First Amendment right to promote electronic devices as end-of-course gifts during the December pre-enrollment process, and the Secretary admits that he restricted the appellant's promotional activities in this regard. <u>See</u> <u>Rocket Learning</u>, 2011 WL 7645795, at *13. As the magistrate judge recognized, however, this restriction was incidental to the Secretary's interpretation and enforcement of the New Manual's rule governing the awarding of end-of-course gifts. Because the Secretary concluded that the electronic devices described in the plaintiffs' SES certification proposals were not awardable as end-of-course gifts, the plaintiffs were also disallowed from promoting those devices during pre-enrollment. <u>Id.</u> Moreover, the complaint did not allege that the plaintiffs were prevented from informing guardians or students about any of "the approved aspects of their [SES certification] proposals." <u>Id.</u>

The district court dismissed the plaintiffs' First Amendment claim on this basis, explaining that:

> [I]f, as this Court has determined, plaintiffs did not include the type of electronic devices in their proposals that defendant understood could be given away as gifts to students, they

were not only banned from the underlying activity of gift-giving, but they were also banned from promoting the giving away of gifts, as allowing the latter without the former would clearly be misleading, and thus in violation of the first prong of the Central Hudson test.

Rocket Learning, 851 F. Supp. 2d at 396-97 (citing Central Hudson, 447 U.S. at 566 ("For commercial speech to come within [the First Amendment's protections], it at least must concern lawful activity and not be misleading." (emphasis added))); see also Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake.").

We see no basis for disturbing the district court's well-reasoned determination. For the reasons stated above, we have also found that the Secretary offered a rational explanation for his decision not to allow the appellant to award electronic devices as end-of-course gifts. As a result, any promotion of such devices during the December pre-enrollment process by the appellant would necessarily mislead guardians and students, removing that promotion from the ambit of the First Amendment. See Wine & Spirits Retailers, Inc. v. Rhode Island, 481 F.3d 1, 8 (1st Cir. 2007) (recognizing that, under the Central Hudson framework, "advertising that is actually misleading 'may be prohibited entirely'" (quoting In re R.M.J., 455 U.S. 191, 203 (1982))).

Accordingly, the Secretary is entitled to qualified immunity based upon Rocket Learning's failure to articulate a plausible First Amendment violation.

IV.

The judgment of the district court is <u>affirmed</u>.