# United States Court of Appeals
## For the First Circuit

No. 15-1657

PAUL DEGRANDIS,

Plaintiff, Appellant,

v.

CHILDREN'S HOSPITAL BOSTON,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Jennifer A. O'Brien, with whom Law Firm of Attorney Jennifer A. O'Brien was on brief, for appellant.
Katherine Y. Fergus, with whom Tracey E. Spruce and Spruce Law LLC were on brief, for appellee.

November 18, 2015

**LYNCH**, **Circuit Judge**. Paul DeGrandis was fired from his job as a carpenter at Children's Hospital Boston ("Hospital") in 2008. The Hospital's stated reason for firing DeGrandis was his "failure to meet job performance standards." Days short of six years later, DeGrandis sued the Hospital, asserting that it did not have cause to fire him. The district court dismissed his complaint. He now appeals the dismissal of one of the counts in his complaint, a claim under section 301 of the Labor Management Relations Act ("LMRA") for breach of a Collective Bargaining Agreement ("CBA"). The ultimate question here is whether a six-year statute of limitations for breach of contract or a six-month limitations period for hybrid claims applies. The district court held that DeGrandis was required to bring a hybrid claim, one that alleges breach of contract by the Hospital as well as breach of the duty of fair representation by his union. We disagree and find that DeGrandis was not required to bring a hybrid claim, so the six-year statute of limitations applies. Accordingly, we reverse.

At the heart of this appeal is a Memorandum of Agreement ("MOA") that DeGrandis, the Hospital, and DeGrandis's union had entered into after a previous grievance filed by DeGrandis in 2007. Under the plain language of the MOA, the grievance and arbitration procedures set forth in the CBA could not be invoked in the event that DeGrandis was terminated for "failure to comply with the

[Hospital]'s generally applicable work standards." Because this MOA provision amounts to a waiver of the typical rule that before proceeding to federal court a plaintiff must exhaust a CBA's grievance and arbitration procedures and abide by its finality provisions, we find that the district court erred in dismissing DeGrandis's complaint.

## I.

Because this case is before us on the district court's grant of a motion to dismiss for failure to state a claim, see Fed. R. Civ. P. 12(b)(6), we summarize "the relevant facts based upon the well-pleaded allegations in the . . . complaint." Eldredge v. Town of Falmouth, MA, 662 F.3d 100, 102 (1st Cir. 2011). We may also consider "documents annexed to [the complaint] or fairly incorporated into it, and matters susceptible to judicial notice." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005).

In September 2003, DeGrandis was hired by the Hospital to work as a carpenter. At all relevant times, the Hospital was party to a CBA with the International Union of Operating Engineers, Local 877, AFL-CIO. DeGrandis was a member of the union. Pursuant to the CBA, the Hospital recognized the union as the exclusive bargaining representative for purposes of collective bargaining.

The CBA requires that the Hospital have "just cause" before it can "discharge, suspend, or discipline any employee."

- 3 -

It also provides for a mandatory grievance procedure. If a grievance is settled during this process, "it shall be considered closed and shall not thereafter be subject to the grievance procedure or to arbitration." If a grievance "has not been settled after being fully processed through the grievance procedure," it may be arbitrated, and "[t]he award of the arbitrator on any grievance properly submitted to him hereunder shall be final and binding upon the parties."

DeGrandis's 2004, 2005, and 2006 performance reviews all stated that he was meeting the Hospital's overall job performance standards. DeGrandis claims that even though he was meeting these performance standards, his supervisor, William Connelly, repeatedly harassed him and used foul language with him. Over time, it became clear to DeGrandis that Connelly did not like him and wanted to fire him. DeGrandis claims that Connelly went so far as to report false and misleading information about DeGrandis to the Hospital.

After DeGrandis suffered two on-the-job injuries between June and July of 2007, both of which required him to miss work, the Hospital proposed terminating his employment. DeGrandis, represented by the union, filed a grievance regarding this proposed action. On July 30, 2007, DeGrandis suffered another on-the-job injury, causing him to miss more work. On July 31, 2007,

DeGrandis, the Hospital, and a union representative entered into a Memorandum of Agreement,[1] which provides:

> All parties hereby agree as a full and final resolution of the Union's grievance for Mr. Paul DeGrandis over proposed discipline for poor work performance, that any further failure to comply with the Employer's generally applicable work standards during the 12 month period following the date of this agreement shall be grounds for immediate termination, and that termination on that basis shall not be subject to the grievance and arbitration provision of the parties' collective bargaining agreement.

DeGrandis continued to work for the Hospital after signing the MOA. On October 23, 2007, DeGrandis was given his 2007 performance review, which covered the period from September 30, 2006 to September 8, 2007. This performance review was the first time during his employment with the Hospital that he was rated as not meeting the Hospital's overall job performance standards.

On January 23, 2008, DeGrandis was injured again, returning to work in early February. Upon DeGrandis's return,

---

[1] The Hospital refers to the MOA as a "last chance agreement." "Once an employee is exposed to severe disciplinary jeopardy, usually discharge, a 'last chance' agreement may be offered by the employer or sought by a union representing the employee in an attempt to salvage the individual's job and rehabilitate him. Such agreements are common in areas of drug and alcohol abuse, and generally provide that further instances of specified misconduct by the employee will result in termination." Bailey v. Ga.-Pac. Corp., 306 F.3d 1162, 1165 n.2 (1st Cir. 2002). However, this MOA differed in language from others, as described in footnote 4.

Connelly assigned him to repair a broken shelf. DeGrandis contacted a lead carpenter, who was also his immediate supervisor, to inform him that the shelf could not be repaired and instead had to be replaced, which would take more time than had been allotted. The next day, Connelly complained to DeGrandis that the shelf was still broken. DeGrandis claims that although he did nothing to merit termination, after the shelf incident, Connelly contacted his supervisor, Paul Williams, to seek DeGrandis's termination. According to DeGrandis, Connelly lied to his supervisor regarding the shelf incident in order to establish cause for his termination. DeGrandis was fired on February 29, 2008 for "failure to meet job performance standards."

Because, as the parties agree, grievance and arbitration procedures were unavailable to DeGrandis under the MOA, he brought suit against the Hospital in federal district court. DeGrandis's complaint was filed on February 25, 2014, just shy of six years after his termination. The complaint sets forth three causes of action, only one of which is before us.[2] At issue here is

---

[2] DeGrandis brought two state-law claims against the Hospital, one for breach of contract and the other for breach of the covenant of good faith and fair dealing. Both of those claims were dismissed by the district court because they were completely preempted by the LMRA, and there was no need to convert them into LMRA claims because DeGrandis had already asserted a separate LMRA claim. DeGrandis does not appeal the dismissal of these two claims.

DeGrandis's breach of contract claim against the Hospital brought under section 301 of the LMRA.

The Hospital filed a Rule 12(b)(6) motion to dismiss. After initially denying the motion as to DeGrandis's LMRA claim, the district court granted the Hospital's motion to reconsider and, after reconsideration, dismissed the LMRA claim. The district court concluded on reconsideration that the only way DeGrandis could bring his LMRA claim against the Hospital was by bringing a so-called hybrid claim, for which "the plaintiff 'must prove both that the employer broke the [CBA] and that the union breached its duty of fair representation,'" Balser v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers (IUE) Local 201, 661 F.3d 109, 118 (1st Cir. 2011) (alteration in original) (quoting Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575, 983 F.2d 325, 330 (1st Cir. 1992)). Because DeGrandis had not brought a claim against the union, the district court concluded that he was barred from bringing his LMRA claim. The district court also found that even if DeGrandis's complaint could be construed as alleging the union's breach of the duty of fair representation, the complaint was filed well outside the six-month statute of limitations for hybrid claims established by the Supreme Court in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 169-72 (1983).

We review de novo an order of dismissal for failure to state a claim. Eldredge, 662 F.3d at 104. "While a complaint does not need 'detailed factual allegations' to survive a motion to dismiss, a plaintiff's factual allegations 'must be enough to raise a right to relief above the speculative level.'" Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The district court may grant a motion to dismiss based on a defendant's affirmative defense of a statute of limitations "when the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998); see also Centro Medico del Turabo, 406 F.3d at 6.

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has read section 301 to permit individual employees to bring these suits against their employers. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976).

But before an employee can bring a breach of contract claim against his employer under section 301, he must "exhaust the CBA's grievance procedures" and "abide by the CBA's finality

provisions." <u>Ramírez-Lebrón</u> v. <u>Int'l Shipping Agency, Inc.</u>, 593 F.3d 124, 131 (1st Cir. 2010). We have previously noted that "[a] CBA generally provides for the <u>final, binding</u> resolution of labor disputes through grievance procedures in which the union fairly represents the aggrieved employee(s)."[3] <u>Id.</u>

When the Hospital proposed terminating DeGrandis in 2007, DeGrandis pursued the grievance process outlined in the CBA. The result was the MOA, which constituted the "full and final resolution of the Union's grievance for Mr. Paul DeGrandis over proposed discipline for poor work performance." In the MOA, the parties waived, for a twelve-month period, use of the CBA's grievance and arbitration procedures for any complaints DeGrandis might bring in the event that he was terminated for "failure to comply with the [Hospital]'s generally applicable work standards."

Seven months later, the Hospital terminated DeGrandis, asserting that he had "fail[ed] to meet job performance standards." DeGrandis disagrees. He argues that the Hospital did not have

---

[3] As a result, "courts have not allowed employees to challenge the underlying merits of arbitration awards by way of Section 301 <u>absent circumstances that have impugned the integrity of the arbitration process</u>, for instance, 'fraud, deceit, or breach of the duty of fair representation or unless the grievance procedure was a sham, substantially inadequate or substantially unavailable.'" <u>Ramírez-Lebrón</u>, 593 F.3d at 131 (quoting <u>Harris</u> v. <u>Chem. Leaman Tank Lines, Inc.</u>, 437 F.2d 167, 171 (5th Cir. 1971) (per curiam)).

cause to fire him and that he did comply with its generally applicable work standards.

If the MOA had not contained the waiver of grievance and arbitration provision, this claim would have proceeded as normal under the CBA. DeGrandis would then have been required to file a new grievance and follow the procedures set forth in the CBA. After exhausting the CBA's grievance and arbitration procedures, DeGrandis would have been bound by the CBA's finality provision and would have been barred from bringing a section 301 claim unless he could show "circumstances that have impugned the integrity of the arbitration process." Id. (emphasis omitted). Indeed, under this hypothetical, if DeGrandis were not to have followed the CBA's grievance procedures and had instead proceeded directly to federal court with an LMRA claim, the Hospital no doubt would have moved to dismiss for failure to exhaust his contractual remedies.

But under the plain language of the MOA, DeGrandis and the Hospital waived the CBA's grievance and arbitration procedures for precisely the type of grievance at issue in this case.[4] Since

---

[4] Not all last chance agreements preclude grievance and arbitration of the employer's underlying charge of misconduct, as the MOA did here. In fact, other last chance agreements have "bifurcate[d] the question of guilt from the question of the appropriate penalty," permitting grievance and arbitration of the former. United Steelworkers of Am., AFL-CIO-CLC v. Lukens Steel Co., Div. of Lukens, Inc., 969 F.2d 1468, 1477 (3d Cir. 1992). For example, in Merck & Company, Inc. v. International Chemical Workers Union Council of the United Food and Commercial Workers Union, Local 94C, the last chance agreement provided that the

- 10 -

DeGrandis was precluded by the MOA from bringing his challenge through grievance and arbitration, the only procedural reason for closing the courthouse doors, failure to exhaust, is simply not involved. The exhaustion rule -- and by extension the finality rule -- could not prevent DeGrandis from bringing his claim in federal court if there were no grievance or arbitration procedures to exhaust in the first place. See Daigle v. Gulf State Utils. Co., Local Union No. 2286, 794 F.2d 974, 977 (5th Cir. 1986) ("[I]f the collective bargaining agreement does not provide that the grievance and arbitration procedure is the exclusive and final remedy for breach of contract claims, the employee may sue his employer in federal court under § 301, and the state statute of

---

employee's failure to comply with the specified contractual requirements would render him "subject to immediate termination and such termination [would] not be subject to the contractual grievance and arbitration procedures." 335 F. App'x 300, 301 (4th Cir. 2009) (per curiam) (alteration in original). However, the agreement went on to state "that in the event of a termination, [the employee] may file a grievance challenging the facts upon which the Company determined that [the employee] was non-compliant or otherwise in violation of this Agreement." Id.; see also United Food & Commercial Workers, Local 1546 v. Ill.-Am. Water Co., 569 F.3d 750, 752 (7th Cir. 2009) ("The Union and the Employee expressly waive any right to file a grievance or other claim regarding Employee's discharge under this Agreement, except to contest the fact of what occurred. If the conduct occurred, an Arbitrator will not have any authority to modify the discharge to a lesser penalty."); Summers v. Keebler Co., 133 F. App'x 249, 250 (6th Cir. 2005) ("The last chance agreement specifically provides that '[i]t is understood and agreed that should [the employee] be terminated for violation of the Substance Abuse Policy, the parties may grieve the appropriateness of the charge only and cannot contest the degree of penalty.'" (first alteration in original)).

limitations applicable to contract breaches applies." (citation omitted)).  DeGrandis's only option for obtaining review was to bring a claim in federal court.  And that is precisely what he did when he brought this straightforward breach of contract claim under section 301 of the LMRA.

The Hospital argues that DeGrandis already exhausted the CBA's grievance procedures after he filed his 2007 grievance.  It urges us to find that the MOA itself constituted the final resolution of DeGrandis's 2008 grievance and triggered the finality provision of the CBA, thereby severely restricting federal court review.  According to the Hospital, allowing DeGrandis to prosecute his claim in federal court would amount to a "second bite of the apple."  But what the Hospital fails to realize is that there are two apples on the table.  The MOA was the final resolution of DeGrandis's 2007 grievance for his then-proposed termination; his 2008 grievance for actual termination is an entirely distinct matter.  DeGrandis is not getting a second bite at the apple; he is getting a first bite at a new apple.

Since DeGrandis could not under the MOA take advantage of the CBA's grievance and arbitration procedures, for us to find that he cannot challenge his termination in federal court would amount to giving the Hospital an unreviewable right to fire DeGrandis for any reason so long as it claimed that it was firing

him for failure to abide by its work requirements.  The MOA gives the Hospital no such right.

The Hospital argues that DeGrandis could bypass the CBA's finality provision and obtain review if he brought a hybrid claim.  But DeGrandis has no reason to sue his union.  We decline to adopt a rule that would require DeGrandis to manufacture a fictitious claim against his union in order to obtain some measure of review of the Hospital's decision.[5]  Because the waiver provision in the MOA renders the exhaustion and finality rules inapplicable to DeGrandis's second grievance, he faces no procedural bar to bringing his section 301 breach of contract claim against the Hospital, and his claim is timely.

### III.

The dismissal is <u>reversed</u> and the case <u>remanded</u> for further proceedings consistent with this opinion.

---

[5]  "[C]ircumstances may arise, like those alleged here, where the union has <u>not</u> wrongfully refused to process the employee's grievance, and thus the employee has no cause of action against the union for breach of the duty of fair representation.  But such circumstances do not in themselves foreclose the employee's breach of contract action against the employer under Section 301."  <u>Ramírez-Lebrón</u>, 593 F.3d at 134 (citing <u>Vaca</u> v. <u>Sipes</u>, 386 U.S. 171, 185 (1967)).