FILED
United States Court of Appeals
Tenth Circuit

May 6, 2019

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

PHYLLIS MWAURA,
a/k/a Phyllis Nyambua Mwaura,

      Petitioner,

v.

WILLIAM P. BARR,
United States Attorney General,*

      Respondent.

No. 18-9506
(Petition for Review)

_____

**ORDER AND JUDGMENT***

_____

Before **HARTZ**, **MATHESON**, and **CARSON**, Circuit Judges.

_____

Phyllis Mwaura, a native and citizen of Kenya, petitions for review of the

denial of her motion to reopen her immigration proceedings. Exercising jurisdiction

under 8 U.S.C. § 1252(a), *see Kucana v. Holder*, 558 U.S. 233, 253 (2010); *Infanzon*

_____

    * In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, William P. Barr is substituted for Jefferson B. Sessions, III, as the
respondent in this action.

    ** After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

*v. Ashcroft*, 386 F.3d 1359, 1361 (10th Cir. 2004), we grant the petition and remand for further proceedings.

## BACKGROUND

Ms. Mwaura, a member of Kenya's Kikuyu tribe, entered the United States on a nonimmigrant student visa in January 1997. Although she graduated from college, she did not leave. Ten years after her entry she was served with a Notice to Appear. She applied for cancellation of removal based on hardship to her three United States citizen children (two daughters and a son), but the immigration judge (IJ) denied the application. Cancellation of removal requires demonstrating good moral character for the preceding ten years, 8 U.S.C. § 1229b(b)(1)(A), (B), and the IJ found that she could not meet that requirement because in 2005 she had entered into a fraudulent marriage with a United States citizen to seek adjustment of status. In August 2012 the Board of Immigration Appeals (BIA) dismissed her appeal, agreeing with the IJ's determination that she was statutorily ineligible for cancellation of removal because committing marriage fraud precluded her from establishing good moral character.

Five years later, in August 2017, Ms. Mwaura filed a motion to reopen her immigration proceedings to allow her to apply for asylum, withholding of removal, and relief under the Convention Against Torture. She explained that soon after the BIA dismissed her appeal in 2012, she learned for the first time that several family members in Kenya had been subjected to female genital mutilation (FGM). Her family expressed concern for her and her daughters' safety in Kenya.

2

Accordingly, within weeks of the BIA's August 2012 decision, Ms. Mwaura retained attorney James Sarpong to file an application for asylum or withholding of removal, prepaying his $7,000 fee. But Mr. Sarpong never filed the application. He was suspended from the practice of law in February 2016 and disbarred in March 2017. Ms. Mwaura learned of the suspension in June 2016 and worked with Colorado's Office of Attorney Regulation Counsel in its investigation. In June 2017 she was partially reimbursed for the fee she had paid to Mr. Sarpong, allowing her to hire new counsel to file the motion to reopen.

In her August 2017 motion to reopen, Ms. Mwaura asserted that she was eligible for asylum or withholding of removal on account of changed circumstances in Kenya. She claimed "membership in the particular social group, women who are members of the Kikuyu Tribe in Kenya who have not been subjected to FGM, as practiced by that tribe, and who are opposed to the practice." Admin. R. Vol. 1 at 122 (internal quotation marks omitted). Her supporting affidavit stated that if she returned to Kenya she would have to live in her traditional village, where she would be at increased risk of being forcibly subjected to FGM. She also attached materials suggesting the resurgence of a violent sect known as the Mungiki and its adherence to FGM. Ms. Mwaura understood that the Mungiki sect was active in her village. She informed the BIA that although her parents had protected her and her sisters from FGM by locating the family in Nairobi and limiting their contacts with their village, "[a]s a single mother with three (3) children, [Ms. Mwaura] would face extreme social stigma" and she and her daughters would be "place[d] . . . in a

3

particularly vulnerable position as targets for the Mungiki." Admin. R., Vol. 1 at 14, 15. In the alternative to reopening based on changed country conditions, Ms. Mwaura requested equitable tolling of the deadline for a motion to reopen based on ineffective assistance of counsel.

The BIA denied the motion to reopen on three grounds. First, it held that the motion to reopen was untimely. Even assuming that Mr. Sarpong had been ineffective, the BIA concluded that Ms. Mwaura had not demonstrated due diligence because she did not file the motion for more than a year after she learned of his suspension and more than 90 days after she learned of his disbarment. Second, the BIA held that Ms. Mwaura had not shown that her right to due process was violated by Mr. Sarpong's conduct because she had failed to establish prima facie eligibility for either asylum or withholding of removal, and therefore she failed to establish prejudice. It noted that even if filed in 2012, an asylum petition would have been untimely. It further stated that she "did not experience female genital mutilation (FGM) in Kenya . . . although she lived there until about age 20 . . . . She is now 41 years old, and has not offered evidence that it is likely that she will be seized and forcibly compelled to undergo this barbaric procedure upon her return to Kenya." Admin. R., Vol. 1 at 4. Finally, the BIA stated that "in light of the respondent's history of marriage fraud, the Board would deny reopening in the exercise of discretion." *Id.*

4

## DISCUSSION

We review the BIA's denial of a motion to reopen for abuse of discretion.

*Infanzon*, 386 F.3d at 1362. "The BIA abuses its discretion when its decision

provides no rational explanation, inexplicably departs from established policies, is

devoid of any reasoning, or contains only summary or conclusory statements." *Id.*

(internal quotation marks omitted). "Moreover, committing a legal error or making a

factual finding that is not supported by substantial record evidence is necessarily an

abuse of discretion." *Qiu v. Sessions*, 870 F.3d 1200, 1202 (10th Cir. 2017) (brackets

and internal quotation marks omitted).

## I.     Timeliness/Due Diligence

The BIA first held that Ms. Mwaura's motion was untimely and that she failed

to show that she acted with due diligence. In reaching these conclusions, however,

the BIA failed to assess relevant arguments Ms. Mwaura had set out.

First, Ms. Mwaura sought reopening to pursue asylum and withholding of

removal based on changed country conditions in Kenya.[1] Accordingly, the time

limitations for motions to reopen may not apply. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii)

(providing that "[t]here is no time limit on the filing of a motion to reopen" to apply

---

[1] Before this court, the government asserts that Ms. Mwaura failed to exhaust her administrative remedies with regard to changed country conditions by "not meaningfully rais[ing] this claim in her opening brief before the [BIA]." Gov't Resp. Br. at 14 n.1. To the contrary, Ms. Mwaura's motion to reopen  did allege changed country conditions. Rather than holding that Ms. Mwaura had not adequately presented her argument, the BIA failed to address it at all. We express no opinion on the sufficiency of the changed-country-conditions argument, leaving the BIA to consider the issue in the first instance.

for asylum or withholding of removal "based on changed country conditions arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding"); 8 C.F.R. § 1003.2(c)(3)(ii) (providing that "time and numerical limitations . . . shall not apply to a motion to reopen . . . [t]o apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing").

The BIA, however, did not discuss Ms. Mwaura's allegations of changed country conditions. It is not clear if the BIA considered her contentions and rejected them without discussion, or if it simply did not consider them. Either alternative, however, would constitute an abuse of discretion. Although "the BIA is not required to discuss every piece of evidence when it renders a decision," it must at least "set[] out terms sufficient to enable us as a reviewing court to see that the [BIA] has heard, considered, and decided." *Hadjimehdigholi v. I.N.S.*, 49 F.3d 642, 648 n.2 (10th Cir. 1995) (internal quotation marks omitted). "We cannot perform a meaningful review where the [BIA] does not sufficiently articulate its reasoning." *Mickeviciute v. I.N.S.*, 327 F.3d 1159, 1162 (10th Cir. 2003); *see also Infanzon*, 386 F.3d at 1362 (the BIA abuses its discretion when it provides no rational explanation, or its decision is devoid of reasoning). And "the BIA may not simply overlook evidence in the record that supports the applicant's case"; it "is not permitted simply to ignore or misconstrue evidence in the asylum applicant's favor." *Karki v. Holder*, 715 F.3d

6

792, 800 (10th Cir. 2013) (internal quotation marks omitted); *see also Qiu*, 870 F.3d at 1204-05 (the BIA abuses its discretion when it fails to assess and consider evidence of increased persecution with regard to claim of changed country conditions).

Also, in assessing Ms. Mwaura's alternate argument for equitable tolling, the BIA simply stated that Ms. Mwaura had not demonstrated due diligence because she waited more than a year after learning of Mr. Sarpong's suspension, and more than 90 days after learning of his disbarment, to file the August 2017 motion to reopen. It did not recognize or discuss Ms. Mwaura's stated reason for the delay—that she had paid Mr. Sarpong $7,000 in advance, and that she was unable to afford new counsel until after she received a reimbursement from the Client Security Fund in June 2017. The BIA's failure to explain why it found Ms. Mwaura's explanation insufficient leaves us unable to conclude that the BIA "heard, considered, and decided," *Hadjimehdigholi*, 49 F.3d at 648 n.2 (internal quotation marks omitted), and unable to perform a meaningful review of the due-diligence decision, *see Mickeviciute*, 327 F.3d at 1162.

## II.    Lack of Prejudice/Prima Facie Eligibility

The BIA next concluded that Ms. Mwaura had failed to show prejudice from counsel's conduct because she had not established prima facie eligibility for either asylum or withholding of removal. These conclusions represent an abuse of discretion for reasons similar to those for the timeliness/due diligence holding.

7

With regard to asylum, the BIA noted that an asylum application would have been untimely in 2012. This conclusion, however, also is undermined by Ms. Mwaura's allegation of changed country conditions. While an alien generally must file an asylum application within one year of entering this country, 8 U.S.C. § 1158(a)(2)(B), that deadline does not apply when the asylum application is based upon changed circumstances, *id.* § 1158(a)(2)(D). Thus, the BIA erred in not evaluating Ms. Mwaura's allegations of changed country conditions before concluding that a 2012 asylum application would have been untimely.

With regard to withholding of removal, the BIA stated that Ms. Mwaura had not been subjected to FGM during the first 20 years of her life, and "[s]he is now 41 years old, and has not offered evidence that it is likely that she will be seized and forcibly compelled to undergo this barbaric procedure upon her return to Kenya." Admin. R., Vol. 1 at 4. It is not clear whether the BIA intended to say that Ms. Mwaura had not offered any evidence, or that the evidence she offered was insufficient to establish a case for withholding of removal. If the former, the BIA's conclusion would be contrary to the record, as Ms. Mwaura did present evidence.[2] If

---

[2] Ms. Mwaura's testimony is evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(ii). She discussed how her family had previously protected her from FGM and alleged that such protection would be unavailable should she return to Kenya. She stated that the violent pro-FGM sect the Mungiki is active in her home village, and she also identified specific reasons why she may be subjected to FGM, even at this point in her life. For one, she stated that she would be targeted simply *because* she had escaped the procedure for her first 20 years, as well as because she had moved to the United States. For another, she stated that she would be returning to Kenya as a single woman with three children, a status that traditionalists would find offensive.

the latter, the BIA did not offer any reasoning why it found Ms. Mwaura's evidence insufficient, leaving us unable to conclude that the BIA "heard, considered, and decided," *Hadjimehdigholi*, 49 F.3d at 648 n.2 (internal quotation marks omitted), and unable to perform a meaningful review of its decision, *see Mickeviciute*, 327 F.3d at 1162.

## III.    Discretionary Denial

Finally, the BIA stated that it would deny reopening in the exercise of its discretion because of Ms. Mwaura's prior commission of marriage fraud. *See* 8 C.F.R. § 1003.2(a) ("The [BIA] has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.").  This provision applies only to reopening to consider asylum, not to reopening to consider withholding of removal.  *See I.N.S. v. Abudu*, 485 U.S. 94, 105 (1988) ("[I]n cases in which the ultimate grant of relief is discretionary (asylum, suspension of deportation, and adjustment of status, *but not withholding of deportation*), the BIA may leap ahead, as it were, over the . . . threshold concerns . . . and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." (emphasis added)); *Karki*, 715 F.3d at 801 ("[A]lthough a grant of asylum is in the discretion of the Attorney General, restriction on removal is granted to qualified aliens as a matter of right." (internal quotation marks omitted)).[3]  Therefore,

---

[3] "Restriction on removal" is the precise term for the form of relief often still referred to as "withholding of removal."  *See Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004).  In this decision we have used "withholding of removal" in conformance with the agency's decision and the parties' filings.

9

to the extent that the BIA's blanket application of its discretion was addressed to withholding of removal as well as asylum, that was legal error.

Moreover, the BIA identified only one negative factor and failed to discuss any other factors, including any equities in Ms. Mwaura's favor. But we have noted, albeit in a slightly different context, that "the BIA may not rely on a single fact in exercising its discretion." *Htun v. Lynch*, 818 F.3d 1111, 1120 (10th Cir. 2016). In *Htun*, we rejected the petitioner's weighing argument because the BIA had discussed both favorable and negative equities in exercising its discretion to deny asylum. *See id.* But in this case, the BIA recognized no other factor, whether positive or negative, and undertook no such weighing. If the BIA cannot rely on only one factor in discretionarily denying asylum, as recognized in *Htun*, it logically follows that it cannot rely on only one factor in discretionarily denying reopening to consider asylum, as here. We therefore conclude that the BIA's discretionary denial of asylum based on consideration of only one negative factor was "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

## CONCLUSION

We grant the petition for review and remand this matter to the BIA for further consideration. In doing so, we express no opinion as to the ultimate merits of the case.

Entered for the Court

Harris L Hartz
Circuit Judge

10